# JOHN S. ZEILER *vs.* THE CENTRAL RAILWAY COMPANY AND OTHERS.

*Municipal Corporations—Rules of Procedure of the City Council of Baltimore—Ordinance Passed in Conformity Therewith—Indefinite Postponment of a Subject—Quorum—Two-thirds of a Quorum is Two-thirds of a Branch of the City Council—Ordinance Granting Street Railway Franchise.*

An ordinance of the Mayor and City Council of Baltimore authorized the defendant to lay railway tracks upon certain streets. Plaintiff filed a bill for an injunction to restrain the construction of the same, alleging that certain rules of procedure of the two Branches of the City Council had been violated in the passage of the ordinance and that it was consequently void. The rules in question were substantially as follows : Rule 20. When a question shall have been indefinitely postponed, the same subject shall not be acted on again during the session. Rule 9. Every ordinance shall have two readings on two separate days, unless two-thirds of the members of the Branch shall by vote otherwise direct. Rule 15. Any standing rule may be suspended upon the assent of three-fourths of the members present except Rule 9. On May 18th, two ordinances were reported to and read in the Second Branch, the first authorizing the defendant to lay its tracks on certain streets on certain conditions, and the other authorizing the defendant to lay its tracks on other streets upon other conditions. On May 25th, the matter of the first ordinance was, by vote, indefinitely postponed. On June 8th, the second ordinance was passed after the adoption of an amendment by which the streets mentioned in the first ordinance were included, with some others. On the same day, the ordinance so passed was brought up in the First Branch, where it was passed under a suspension of the rules, which was ordered by the affirmative votes of fourteen members, which was two-thirds of the members present but not two-thirds of the entire body. *Held,*

1st. That although the second ordinance, which was passed, possessed some features in common with the first ordinance which had been indefinitely postponed, yet they were substantially different in respect to the privileges conferred upon the defendant and the manner in which the interests of the public were protected, and that therefore the passage of the second ordinance was not a violation of Rule 20, providing that after a subject has been indefinitely postponed, it shall not be acted on again at the same session.

2nd. That under Rule 9, a vote of two-thirds of the members of the Branch present and voting, not being less than a majority, is sufficient, and that a vote of two-thirds of all the members of the Branch is not necessary.

3rd. That the motion in the First Branch to suspend the rules in order to obtain a second reading of the ordinance, which was passed by a two-thirds vote, was sufficient to put the ordinance on its second reading, because under Rule 9, and independently of Rule 15, such a vote is sufficient to direct the reading of an ordinance.

4th. That since there had been no violation of the Rules of the Council in the passage of the ordinance it is unnecessary to consider what the effect of a violation would be upon the validity of an ordinance. (a).

A majority of a legislative body is in all cases a quorum, entitled to act for the whole, except when the power that created it has otherwise directed.

A majority of the members of each Branch of the City Council of Baltimore is a quorum.

When a rule of the Council provides that a vote of two-thirds of the members of a Branch shall be necessary in certain cases, this means two-thirds of the members present and voting and constituting a quorum and not two-thirds of all the members elected. (b).

Appeal from a decree of the Circuit Court of Baltimore City (HARLAN, C. J.), dismissing the bill of complaint in this case. The bill alleged that the plaintiff was the owner of property on Wolfe street, in said city, upon which street the Central Railway Company, one of the defendants, intended to lay its tracks under the authority of an alleged ordinance of the Mayor and City Council; that the said ordinance had not been lawfully enacted and was void; that

---

(a). Authorities relating to attacks upon ordinances or statutes because not enacted in conformity with rules of procedure, etc., in addition to those cited in the briefs of counsel in this case, may be found in the brief of appellee's counsel in *Hooper* v. *Creager*, *ante*, p. 195; also note appended to *State* v. *Jones*, 23 L. R. A. 340; note appended to *People* v. *Starne*, 85 Am. Dec. 356; *Carr* v. *Cooke*, 116 N. C. 223; *S. C.*, 28 L. R. A. 737; *People* v. *Dunn*, 80 Cal. 211; *Barber Asphalt Co.* v. *Hunt*, 100 Mo. 22; *Berry* v. *Drum Point R. Co.*, 41 Md. 446; *Legg* v. *Annapolis*, 42 Md. 203.

(b). As to what constitutes two-thirds of a legislative body to pass a measure over a veto, see *Hooper* v. *Creager*, *ante*, p. 195.

the plaintiff was opposed to the construction of an overhead electric wire in front of his property, etc.

The prayer of the bill was (1), that Alcaeus Hooper, Mayor, and Janon Fisher, City Commissioner, may by injunction be restrained from issuing or approving any permit to the Central Railway Company authorizing it to dig up Wolfe street opposite or near plaintiff's property, or any of the other streets named in said alleged ordinance, for the construction of any tracks, the erection of any poles, or the stringing of any wires, as pretended to be authorized by the said ordinance. (2) That the Central Railway Company, its officers, agents or employees may by injunction be restrained from using any part of Wolfe street, or any of the other streets named in the aforesaid ordinance, for the purpose of constructing or operating an overhead electric trolley railway, as pretended to be authorized by said ordinance. (3) That the alleged ordinance might be declared by decree to be void.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, PAGE and BOYD, JJ.

*John N. Steele* and *Francis K. Carey* (with whom was *John E. Semmes* on the brief), for the appellant.

The right of an abutter to challenge the validity of an Act or ordinance authorizing the construction of passenger railway tracks upon a public highway opposite his property has been settled in this State in many recent cases; see especially, *Koch* v. *North Avenue Railway Co.,* 75 Md. 222; *Bonaparte* v. *Baltimore, Hampden & Lake Roland Railroad Company,* 75 Md. 340. As to the general right of a Court of Equity to restrain by injunction the enforcement of a void ordinance, see *Mayor, &c.,* v. *Radecke,* 49 Md. 217; *Page* v. *Mayor, &c.,* 34 Md. 558; *Mayor, &c.,* v. *Keyser,* 72 Md. 106; *Van Witsen* v. *Gutman,* 79 Md. 405.

I. If the branches of a City Council, under charter authority to " settle their rules of procedure," adopt a rule

of procedure, by ordinance or resolution, which, for example, requires that an ordinance shall be read twice on separate days before it is put upon its passage, and an ordinance is put upon its passage and passed without being so read, while this rule is in force, the ordinance is void, even although it may afterwards be engrossed and certified to and approved by the Mayor, and it is competent for a Court of Equity to consult the official journals for the purpose of determining whether an ordinance has been passed in conformity with such a rule.   See *Swindell* v. *State, ex rel Maxey,* 143 Ind. 153 (a case in point); *Heiskell* v. *Mayor,* 65 Md. 148 ; *U. S.* v. *Ballin,* 144 U. S. 1 ; *Dillon on Municipal Corp.,* sec. 288; 1 *Beach on Public Corporations,* sec. 494 ; *Cushing's Law of Legis. Assemblies,* sec. 794.

In the following cases the rules of procedure relied on were established by a City Council and were not prescribed by the Constitution of the State, the charter of the city or any statute of the State : *Atkins* v. *Phillips,* 8 So. Rep. 430. A rule of the Jacksonville City Council, adopted under charter power " to determine its own rules of proceeding," provided that no ordinance should be read a third time on same night as first reading, except by unanimous consent of the Council ; *held,* that this means unanimous consent of quorum of Council, and that the rule thus construed having been obeyed, the disputed ordinance was valid.

*Armitage* v. *Fisher,* 26 N. Y. Sup. 366; 74 Hun, 171. Injunction refused on the ground that Rule 34 of Board of Aldermen was not in force, owing to the adoption of new rules.   In the lower Court—see 24 N. Y. Sup. 650—injunction had been granted on the ground that Rule 34 had been clearly violated by the board.

*People* v. *Cahill,* 39 N. Y. Sup. 375.   A resolution held valid because passed in accordance with valid rules of City Council.

*Whitney* v. *Hudson,* 69 Mich. 202.   A two-thirds vote held to be required on motions for reconsideration where

Council has adopted no rule regulating practice on such motions.

*Greeley* v. *Hanman*, 17 Col. 34. Rules of Council properly suspended by a formal and unanimous vote. Proceedings, therefore, held valid.

In the following cases the rules of procedure were either contained in the charter or established by special statute or by the State Constitution : *Coleman* v. *Dobbins*, 8 Ind. 160. Where statute attacked because rule of Constitution that every bill shall be read on three separate days was alleged to have been broken. *Held*, "that the facts in relation to the passage of an Act would, if formally presented, be a proper subject of judicial inquiry and determination." *People* v. *Barnes*, 35 Ill. 131. Notwithstanding that an Act of Illinois Legislature bore signatures of both speakers and approval of the Governor, it was held not enforceable by the Courts, because rule of Constitution that bills shall be read three several times not shown by journals to have been obeyed. Approved in *South Ottawa* v. *Perkins*, 94 U. S. 260.

*Bloom* v. *Xenia*, 32 Ohio, 461. Ohio Municipal Code provides that all ordinances of permanent nature shall be fully read on three different days, unless rules suspended by three-fourths of all members elected. An ordinance was passed in a batch of several ordinances under one valid suspension of the rules. *Held*, that ordinance was a nullity, because rules were not properly, *i. e.*, separately, suspended.

*Steckert* v. *East Saginaw*, 22 Mich. 104. City charter provided that votes of all councilmen voting on taxes or assessments should be entered at large on the minutes of Council ; and, that in making assessments, the commissioners should report valuation of respective lots assessed. *Held*, that assessment made by city was invalid, because above rules were violated.

*Morrison* v. *Lawrence*, 98 Mass. 221. Where a statute provided that money for a holiday could only be voted by a two-thirds vote of City Council ; *Held*, that city was not

responsible for such expenditure, where record of Council
proceedings failed to show that the rule had been obeyed.

*State* v. *Newark*, 30 N. J. Law, 305.  Where a rule of
city charter provided that all money ordinances shall be
published between their second and third reading ; *Held*,
that an ordinance on the passage of which this rule had
been violated, was void.

*State* v. *Hudson*, 29 N. J. Law, 476.    Where a rule of
city charter required that passage of ordinances should be
preceded by public notice for twenty days ; *Held*, ordinance
violating this rule invalid, " not because it is void in itself,
but because the Council passed it in an unlawful way.

*Delphi* v. *Evans*, 36 Ind. 90.    Where a city charter con-
tained a rule that public improvements, when not petitioned
for, must be voted by a two-thirds vote of Council ; *Held*,
that the making of improvements must strictly comply with
such rule.

In reviewing this reading rule it is only necessary to look
to the authorities to determine its importance.    A rule which
requires that ordinances should have separate readings on
separate days will certainly be conceded to be not only a
reasonable rule of procedure, but one of overwhelming im-
portance and necessity for the protection of the public from
the evils of hasty legislation and for inducing a calm and
judicial treatment by all the members of a legislative body
of the public matters with which the particular ordinance
deals.    The practical effect of such a rule is simply to in-
terpose a reasonable delay in the passage of legislation in
order to give to the public, and all the members of the Coun-
cil, even though a large proportion of such members, with
such information as they have, are disposed to favor its pas-
sage *time for deliberation.*    It is not believed that there is a
single legislative body in this country, if anywhere, which is
not conducted under the wholesome restraints of some such
rule, and it is deemed of such importance that in many
States this particular rule is not left to the legislative bodies
themselves, to be adopted or revised at their pleasure, but

is embodied in the Constitution of the State.   In the char-
ters of some cities the provision is inserted in terms in the
municipal charter, but often, in the case of municipal Coun-
cils, it is adopted with other rules of procedure, either with
or without express legislative authority by the Council itself.

In illustration of the importance which is attached by the
authorities to reading rules we quote from the following
cases.   Thus it was said in *Campbell* v. *Cincinnati,* 31 N.
E. Rep. 606 (Ohio):  " The requirement that ordinances
shall be fully read upon three different days being desig-
nated as a safeguard against rash and inconsiderate legisla-
tion, and being in a great degree essential to the protection
of the rights of property, it should likewise be deemed
a mandatory measure intended as a security to the citizen."
In *Weill* v. *Kenfield,* 54 Cal.  115, it is said:  " A clause in
the Constitution requiring bills to be read three times is
manifestly intended to provide all necessary check upon the
conduct of the two houses ; to prohibit abuses and to pre-
vent hasty and ill-considered legislation."   *Southerland on
Statutory Constitutions* says (sec. 49):  " The requirement
that there be three readings, and they occur on three dif-
ferent days, being intended to prevent hasty and imprudent
legislation, ought on principle to be, and by the weight of
authority is, regarded as mandatory."

II.  The Central Ordinance did not pass the First Branch of
the City  Council in conformity with law, because it was put
upon its passage before it had been read twice  upon two
separate days, as required by the ninth joint standing rule,
which rule was in full force, unsuspended, and binding upon
the branch, at the time the ordinance was put upon its pas-
sage.   For convenience of reference we repeat again the
ninth standing rule.   Every ordinance  or  joint resolution,
before being put on its passage, whether originating in this
or received from the other branch, shall have two readings
on two separate days, unless two-thirds of the members of
the branch shall, by a vote, otherwise direct ; but simple reso-
lutions of inquiry, &c., may at once be put on their passage.

It is conceded, that when the ordinance was received from the Second Branch and was read a first time under Rule II, section 9, an objection was made to a second reading on the same night in the First Branch, and that when a motion was made to suspend Rule IX, in order to read the ordinance a second time on the same night, the motion only received *14* votes out of the *22* members of the branch, which was a vote of two-thirds of the members present, but not a vote of two-thirds of the *22* members of the branch. It is claimed by the counsel for the Central Company that the language "two-thirds of the members of the branch" does not mean "two-thirds of the *22* members," but two-thirds of any legal quorum which happens to be present at the time the vote is taken. It therefore becomes necessary to inquire as to the meaning of "two-thirds of the members of the branch," as used in Rule IX. The appellant contends that this question is settled beyond all possible discussion or dispute by a comparison of the Rule IX with Rule XV, with which it is expressly interlaced by reference.

Now, it will be observed upon examining Rule XV, that any standing rule can be *rescinded or changed* with the assent "of three-fourths of the *members of the branch,* and after one day's notice shall have been given," while "any standing rule may be *suspended* upon the assent of three-fourths of the *members present,* except Rule IX." It is impossible to deny that this rule makes a deliberate distinction between the language "members of the branch" and the language "members present." The radical step of *rescinding* a rule can only be taken by three-fourths of the members of the branch, the mere *suspension* of a rule may be effected by three-fourths of the members of the branch who happen to be present. Unless the words "members of the branch" are construed to mean "*all* the members of the branch" the distinction which the rule makes disappears, and the whole rule becomes absurd.

This argument is strengthened, of course, by noting that

an express exemption is made of Rule IX, which provides for separate readings on separate days, and especial pains are taken to guard against the possibility of Rule IX being suspended by a vote of three-fourths of the members present. Turning now to Rule IX, we find that it uses the language " members of the branch." It can hardly be claimed that this language means " members of the branch present " in Rule IX, in view of the fact that it must be conceded that it means " *all* the members of the branch " in Rule XV. The unreasonableness of any other position is further illustrated by noting that Rule IX has reduced the proportionate vote for suspension from three-fourths to two-thirds. If it is construed to mean two-thirds of those present, or two-thirds of a quorum, four votes in the Second Branch, out of a quorum of six, and eight votes in the First Branch, out of a quorum of twelve, could cast aside one of the most important rules of procedure for public protection. But it is respectfully contended that the question is not an open one, in view of the language of Rule XV, and that it would be necessary to depart from every established rule of construction to give to the language " members of the branch," any different meaning from that which it has in Rule XV, which, of course, is not capable of being questioned.

III. The Central Ordinance has never legally passed either branch of the City Council, because the question as to authorizing it to extend its railway over almost all of the streets named in the ordinance, including Wolfe street, had been indefinitely postponed in the Second Branch at the same session of the Council, and because, under the twentieth joint standing rule, the same subject could not be again considered at such session, by amendment or otherwise.

The view of the appellant is this : The Wolfe street ordinance, which provided for the extension of the overhead electric system of the Central Railway over certain designated streets was indefinitely postponed, and could not, of course, be reconsidered. The Lexington street ordinance,

which both in its title and in its body, related solely to
Lexington street, between Caroline and Gay streets, was
lawfully under consideration. The amendment which added
all the streets named in the Wolfe street ordinance was, we
contend, dealing with the same subject as the Wolfe street
ordinance. The fact that this amendment also dealt with a
single track on Broadway, and that slight changes, none of
them of a material character, were made in the provisions
of the ordinance, did not, in our opinion, alter the fact that
the postponed subject was being reconsidered.

*T. Wallis Blakistone* and *George Blakistone,* for the ap-
pellee.

It is well settled in the construction of the law of parlia-
mentary proceedings embodied in the 20th Rule referred to,
that an ordinance introduced after the indefinite postpone-
ment of another ordinance does not come within the provis-
ions of such rule, unless it is substantially the same ordi-
nance as that which had been indefinitely postponed.
Clearly the ordinance passed on June 8th, 1896, is substan-
tially different from that which was indefinitely postponed
on May 25th, 1896, for the following reasons : (*a*). While
a large portion of the route mentioned in each of the ordi-
nances is the same, yet the ordinance as passed in the Sec-
ond Branch on June 8th, 1896, has a starting point
altogether different from the starting point of the other
ordinance ; for it starts from the present terminus of the
company's line at the corner of Broadway and Shakespeare
streets, whereas the indefinitely postponed ordinances made
no such connection, starting from the corner of Broadway
and Aliceanna streets. (*b*). The ordinance, as passed on
June 8th, 1896, connects the whole system of the Central
Railway Company's present line, and also the new routes
authorized by said ordinance, practically with the City
Hall, as, by virtue of its provisions, tracks are authorized to
be laid on Lexington street to Gay street, which is within
one block of the City Hall. The indefinitely postponed

ordinance made no such connection. This change is of so vital and important a character that, without adverting to any other differences between the ordinances, it would, be-yond all peradventure, support the proposition that the two ordinances are substantially different. (c). The ordinance that passed the Second Branch on June 8th, 1896, authorizes the use, if approved by the City Commissioner, of a different rail from that contemplated by the existing ordinance appli-cable to the Central Railway Company. It moreover au-thorizes the construction of underground conduits for the feed wires. Neither of the provisions mentioned are contained in the ordinance which was indefinitely postponed. (d). The indefinitely postponed ordinance required the construction of gutter plates from curb to curb. The ordinance passed omits this provision, which is considered now a disadvan-tageous one, so far as the use by the public of the streets is concerned. For all these reasons, we respectfully submit that said Rule 20 was in no way violated by the passage of the ordinance above referred to on June 8th, 1896.

Was the ordinance passed in compliance with the other rules of the City Council? 1. After the ordinance above referred to had been passed on June 8th, 1896, by the Sec-ond Branch, it was taken to the First Branch, and on the same day had its first reading. 2. By the 9th Rule it is provided that every ordinance, before being put upon its passage, shall have two readings on two separate days, un-less two-thirds of the members of the branch shall, by vote, otherwise direct. After said ordinance had its first reading on the day mentioned, a motion was made, which though in form, was a motion to suspend the rules, was in effect a motion to give the ordinance a second reading on that day. Under the 9th Rule above referred to, this motion required the votes of two-thirds of the members of the branch to carry it. It did not receive two-thirds of twenty-two, which is the number of the members of which the branch is com-posed, but it did receive the vote of two-thirds of the members present. If a vote of two-thirds of the members

present is, in the eye of the law, to be considered as the vote of two-thirds of the members of the branch, of course the motion was carried.    *Morton* v. *Comptroller-General*, 4 S. C. 462.

It is respectfully submitted that neither Rule 9 nor Rule 15 provides any special form of procedure in placing an ordinance on its second reading, beyond the intimation in Rule 15 that Rule 9 cannot be suspended by any vote, and in Rule 9 that all that is required is that two-thirds of the members shall by vote so direct.    Was not this done by the votes of 14, 17 and 19, which the ordinance received in the various steps of its passage?

But the very resolution adopting the rules, adopts them until otherwise "changed by a vote of the members of the branch," or, as worded in the resolution in the Second Branch, " by a vote of the branch."    There is no pretence that there is any constitutional or legislative enactment in reference to these rules beyond the authority to pass them. They are merely rules of procedure, adopted by the council for its own convenience and government.    Their adoption required only a *majority vote of a quorum.*   What vote is necessary to change them?    Clearly no other than that which adopts them.    If such a vote would change these rules, or rescind them altogether, would not a like vote be sufficient to pass an ordinance in disregard of one of them.

Assuming that the vote of two-thirds of the members present is not to be considered as the vote of two-thirds of the members of the branch, if all are not present, no valid objection could be taken in the Courts to the validity of the ordinance, it having the signature of the Mayor, and this upon two separate grounds : 1. After the vote above mentioned, the ordinance was read the second time on the same day, and thereupon was put upon its passage, and received the vote of more than two-thirds of all the members of the branch.    Even assuming that the ordinance was read twice on the day in violation of Rule 9, because the requisite two-thirds of the members had not voted that it should be read

twice on that day, yet, as subsequently to the second read-
ing, more than two-thirds of the members expressed, by
their votes, their approbation of the ordinance by voting for
its passage, all objections growing out of the failure of the
motion to give it a second reading on that day were removed
by *two-thirds of all the members elected* to the branch giving
their approval to the ordinance by voting for its passage.   2.
But even if the position just above taken is not well-founded,
the validity of the ordinance could not be questioned in this
Court, it having become a perfected ordinance by receiving
the certification of the chief clerk, the members of the en-
grossing committee, and the presidents of the respective
branches, and thereupon been duly presented to the Mayor
and signed by him.

The principle applicable to this subject is thus stated
in well-considered decisions : While the Courts will take
judicial notice of the Constitution and statute laws of the
State, and also will take like notice of the contents of the
journals of legislative bodies far enough to determine
whether an act was *actually passed* in accordance with the
constitutional requirements, when an Act of the Legislature
is in question, and in accordance with the requirements of
the Constitution and laws of the State when an ordinance is
in question ; yet further than this the Courts will not go.
Therefore when it appears that an Act was passed in accord-
ance with constitutional requirements and an ordinance was
passed in accordance with the requirements of the Consti-
tution and laws of the State, and there was no violation of
the Constitution or the laws of this State, in the case at
bar, proven or even claimed, no inquiry will be permitted
to ascertain whether the two houses or bodies have or have
not complied strictly with their own rules in their procedure
upon the ordinance, intermediate between its introduction
and its final passage.   The presumption is conclusive that
they have done so, and no Court, so far as we are aware,
has ever declared an Act of a legislative body void for non-
compliance with the rules of procedure made by itself
or branches thereof.

In *McDonald* v. *State*, 80 Wisconsin, p. 411, the validity of an Act of the Legislature, ch. 488, Laws of 1887, was challenged on two grounds : " (1.) That the two houses of the Legislature, in attempting to enact that chapter, violated their own rules of procedure in several particulars ; and (2) that the yeas and nays were not called on the passage of the bill and entered on the journals of the respective houses ; " and JUDGE LYON, delivering the opinion of the Court, says : " The Courts will take judicial notice of the statute laws of the State, and to this end they will take like notice of the contents of the journals of the two houses of the Legislature far enough to determine whether an Act published as a law was actually passed by the respective houses in accordance with constitutional requirements ; further than this the Courts will not go. Where it appears that an Act was so passed, no inquiry will be permitted to ascertain whether the two houses have or have not complied strictly with their own rules of procedure upon the bill, intermediate between its introduction and final passage. The presumption is conclusive that they have done so ; we think no Court has ever declared an Act of Legislature void for non-compliance with the rules of procedure made by itself or the respective branches thereof, and which it or they may change or suspend at will ; if there are any such adjudications we decline to follow them."

In *Kilgore* v. *Magee*, 85 Pa. St., p. 412, the following language is used by the Court : " But when a law has been passed and approved and certified, in due form, it is no part of the duty of the judiciary to go behind the law as duly certified to inquire into the observance of forms in its passage. The presumption applies to the act of passing the law that applies generally to the proceedings of anybody whose sole duty is to deal with the subject. The presumption in favor of regularity is essential to the peace and order of the State. If every law could be contested in the Courts on the ground of informality in its enactment, the floodgate of litigation would be opened so widely society would be deluged in the flow."

See, also, *Com.* v. *Mayor of Lancaster*, 5 Watts, 155;
1 *Wharton on Evidence*, sec. 290; *Harwood* v. *Wentworth*,
162 U. S. 562; *Railway Co.* v. *Gill*, 54 Ark. 105; *McGraw*
v. *Watson*, 69 Iowa, 348; *Speer* v. *Plank Road*, 22 Pa. St.
378; *Fouke* v. *Douglas*, 13 Md. 413; *Mayor, &c.*, v. *Har-
wood*, 32 Md. 478; *Green* v. *Weller*, 32 Miss. 686, 690.

PAGE, J., delivered the opinion of the Court.

The appellant contends that the ordinance mentioned in
the bill of complaint is null and void, because,

1st. It did not pass the First Branch in conformity with
law, because it was put upon its passage before it had been
read twice upon two separate days, as required by the ninth
joint standing rule then in full force and unsuspended; and
2nd, it did not pass either branch legally, because the ques-
tion as to authorizing the Central Railway Company to
extend its railway " over almost all of the streets named in
the ordinance " had been indefinitely postponed in the
Second Branch at the same session of the council; and
under the twentieth joint standing rule the same subject
could not be again considered at such session by amend-
ment or otherwise.

These propositions involve the consideration of two ques-
tions: First, were the rules of procedure violated as stated;
and second, if they were, did such violation, under all the
circumstances of the case, operate to render the ordinance
null and void?

It is contended that the indefinite postponement of the
" question as to authorizing it (the Central Railway Com-
pany) to extend its railway over almost all of the streets
named in the ordinance (mentioned in the bill), including
Wolfe street," precluded the possibility under the rules of
passing the ordinance under consideration.

The facts are these: On the 18th May, 1896, the joint
standing committee reported favorably to the Second Branch
two ordinances; one entitled " An ordinance to authorize
the Central Railway Company to lay its tracks on Wolfe

street, Aliceanna street and certain other streets in the city of Baltimore" (this will be hereafter referred to as the "Wolfe street ordinance);" the other, "An ordinance to authorize the Central Railway Company to lay its tracks on E. Lexington street in the city of Baltimore." (This will be referred to as the "Lexington street ordinance)."

On the same day both were read and laid over under the rule. On the 25th May the Wolfe street ordinance was put upon its second reading. After several amendments were offered and voted on, it was moved and adopted that "the further consideration of the report and ordinance be indefinitely postponed." On the 8th of June the Lexington street ordinance having passed its second reading, came up again, the question then being upon its passage; and was amended by striking out all of the ordinance, as reported by the committee, after the words at the end of the first section, and inserting those provisions which the appellant contends are in fact the same subject as the Wolfe street ordinance. The rule alleged to have been thereby violated is as follows: "Rule 20. When a question shall have been indefinitely postponed, the same subject, whether originating in this or received from the other branch, shall not be acted on again or reconsidered during the session."

From the bare reading of this rule, it is clear that the indefinite postponement of a question precludes the further consideration of the subject to which the question must be referred during the entire session, whether it originated in the one branch or the other. What then was the subject under consideration upon which the vote of postponement operated? It certainly needs no argument to show that no single feature of the Wolfe street ordinance can be separated from its context, and be properly regarded as the "subject" under consideration. It is true that each item in the ordinance demanded of the members, as watchful guardians of the public welfare, a careful scrutiny. Whether the Central Company should be the donee of the franchise, whether the tracks ought to be permitted on each street

named, whether the terms and conditions upon which the privileges were to be granted, and many other matters demanded the careful attention of the council. But none of these taken separately can properly be regarded as the "subject" postponed. Such a construction would be too narrow, and would preclude the council from considering any other measure that contained any one or more of these features. Such new measure might be highly beneficial to the public, and taken in its entirety, wholly free from the objections of the original ordinance, and yet if it contained any feature common to both measures, the rule would have the effect of rendering the council wholly powerless. We think a more correct construction of this rule is that which prevents further action upon a subject or scheme which is substantially the same as that contained in the postponed ordinance. Now, is the scheme of the Wolfe street ordinance substantially the same as that of the Lexington street ordinance? The donee of the franchise, it is true, in both, is the same; also the mode of propulsion; and many of the streets in the one are mentioned in the other. But in its entirety the scheme of the Lexington street ordinance is wholly different from that contained in the Wolfe street ordinance. The Wolfe street ordinance authorized tracks from Aliceanna street to North avenue, along the streets named; but there is no provision requiring the company to connect the new tracks with its present system, or to furnish an outlet for its passengers, on a single fare, to the centre of the city. Without such provisions the new tracks would be but a local concern, and persons using the new road could go no further than over its limits, unless by transferring and paying an additional fare. On the other hand, by the Lexington street ordinance, the company was required to lay its double tracks down Lexington street to Gay and connect its present system by a single track with the new system of tracks; and having thus provided for a continuous road, permission was granted to lay tracks on other streets opened and to be opened and paved. Moreover there was a more efficient

protection of the public interests in the requirements for gutter-plates and grooved rails.   There are other features by which the two bills may be distinguished, but what we have said is quite sufficient, we think, to substantially differentiate the two measures.   Neither in respect to the privileges conferred on the company, nor in the methods by which the safety, convenience and general interests of the public are protected, nor in the essential features of the two schemes are the two bills alike.   They present two entirely different propositions, having, it is true, some features in common, but in their substance and entirety wholly dissimilar. We are of opinion, therefore, there was no violation of the twentieth rule in the passage of the ordinance in question.

Having thus passed the Second Branch, the Lexington street ordinance, amended as we have stated, came up for consideration in the First Branch on the eighth day of June. " Mr. Allison moved a suspension of the rules to obtain a second reading."   The yeas and nays were called for, and fourteen members voted in the affirmative and six in the negative ; whereupon it was announced that " two-thirds of the members having voted in the affirmative, the motion was declared adopted."   The appellants contend this decision was in violation of the ninth standing rule ; which is as follows :

" Rule 9. Every ordinance or joint resolution, before being put on its passage, whether originating in this, or received from the other branch, shall have two readings on two separate days, unless two-thirds of the members of the branch shall by a vote otherwise direct ; but simple resolutions of inquiry, &c., may at once be put on their passage." It is insisted, that the " two-thirds " here mentioned means two-thirds of all the members of the branch ; that is, in this case, two-thirds of twenty-two members ; and if this be correct, the motion to suspend failed to receive the requisite vote.   Attention is also called to rule fifteen to show, first, the rule cannot be " suspended," and second there is a distinction to be made between " members of the branch " and

" members present," which can only be gratified by construing the former term to mean " All the members of the branch."

Rule 15 is as follows : " No standing rule of the branch shall be rescinded or changed without the assent of three-fourths of the members of the branch, and after one day's notice shall have been given ; but any standing rule may be suspended, upon the assent of three-fourths of the members present, except Rule IX."

But we do not deem it important to determine here what was meant by the use of these different terms ; whether by the words " members present," it was intended to include all who were actually present, as distinguished from those voting.   The question now before us must be determined by the proper meaning to be placed upon the words " Members of the branch," as used in the ninth rule.   It is now well settled, that in all cases a majority of a legislative body is a quorum, entitled to act for the whole body, except where the power that creates it has otherwise directed.   In *United States* v. *Ballin*, 144 U. S. 1, the Court said, " Where a quorum is present the act of the majority of the quorum is the act of the body.   This has been the rule for all time, except so far as in any given case the terms of the organic act under which the body is assembled have prescribed specific limitations."   There is no Act of the State of Maryland that prescribes what number shall constitute a quorum of either of the two Branches of the City Council.   That is determined by the common law, which fixes the "majority as the legal body;" and under the authority granted by the Legislature, to " settle their rules of procedure," there exists no power in either branch or both to fix a greater number.   *Heiskell* v. *Mayor and City Council*, 65 Md. 152. In that case the Court defined a quorum to be, " that number of the body, which when assembled in their proper place, will enable them to transact their proper business ; or in other words, that number that makes a lawful body and gives them power to pass a law or ordinance."   It would

therefore seem to follow from this, that when "a branch," or "the members of a branch," are the words used, with nothing to qualify them, and in the absence of a clear intent to the contrary, they must be taken to mean that " number of the body that makes a lawful body." To construe the words " two-thirds of the members of the branch," as used in the ninth rule, to mean two-thirds of all the members, would be to fix a meaning upon them that would deprive the majority of their legal power to act. It would amount to declaring that a majority, constituting the lawful body, intended, by a rule of procedure, to take away from itself, under certain circumstances, the power it rightfully has to do the work it was assembled to do. We think, therefore, it would be anomalous to hold, that while a majority is competent to do business, a rule, made under a power to settle the " mode and manner " of conducting the business, should be construed in such a manner as to take away from it the power to do business at all, under certain circumstances. " Two-thirds of the members of the branch," we are of opinion, means two-thirds of the members voting, not being less than a majority ; and not two-thirds of all the members. This view is fully sustained by authority. In the case of the *State* v. *McBride*, 4 Mo. 308, the question was upon the adoption of an amendment of the Constitution. " Two-thirds of each house " was the vote necessary to ratify it. The question to be solved was, what was the meaning of the word " House " as used in the Constitution ; did it mean all the members elected, or did it mean any number sufficient to constitute a quorum ? The Court held that the " most common meaning of the word being, the number of members sufficient to constitute a quorum to do business," a vote of two-thirds of those voting, being a quorum, was sufficient. So where the constitutional provision was, " The Legislature shall pass no Act of Incorporation unless with the assent of at least two-thirds of each House," it was held the word " House " meant members present and doing business, being a quo-

rum. *Southworth* v. *Palmy, &c., R. R. Co.*, 2 Mich. 287. This case is cited, apparently with approval, in *Cooley Const. Limitations*, 141 (marg.) ; *Warnack* v. *The City of Lafayette*, 4 La. Ann. 419. In the case of *Green* v. *Weller*, 32 Miss. 700, it was held, that in matters connected with the organ-ization of a body, the preservation of order, and the trans-action of its ordinary business of legislation, the word " house " is synonymous with " quorum " or " majority."

The Constitution of South Carolina provides that no law to create a public debt shall take effect until it has been passed " by a vote of two-thirds of the members of each branch of the General Assembly, &c." In construing this provision the Supreme Court of that State, in the case of *Merhan, Bliss & Co.* v. *The Comptroller-General*, 4 So. Car. 463, after stating that the Constitution fixed the quorum to be a majority, proceeded as follows : " It (a quorum) is indeed for all legal purposes, as much the body to which it appertains, as if all the component parts were present. When, therefore, either branch of the General Assembly is spoken of, in the absence of a clear intent to the contrary, the quorum of such body must be understood as intended. It would follow that provisions ascertaining the mode in which the body should divide, in order to complete action in any given case, whether by a mere majority or by a still greater proportion, must be interpreted primarily as appli-cable to the body as legally organized at the time such ac-tion is taken. If the rule is the mere majority rule, then a majority of the quorum present and acting is intended ; if the rule is that of two-thirds, then two-thirds of such quorum must concur for effective action."

The motion made, was for " a suspension of the rules, in order to obtain a second reading." This, we think, was passed by a two-thirds vote, and was sufficient to put the ordinance on its second reading. It is true, Rule 15 makes no provision for the suspension of Rule 9, but Rule 9 itself provides substantially that the branch, by a two-thirds vote, may direct when the ordinance or joint resolution may be

read.   The motion, therefore, while it may possibly be in-
effective to work a suspension of Rule 9, is quite sufficient
to indicate a direction to put the ordinance on its second
reading at once.

It follows from what we have said, that in our opinion,
there have been no violations of the rules of the council ;
and it therefore is not important to this case to consider what,
if there had been such violations, the effect would have been
upon the validity of the ordinance in question.

*Decree affirmed.*