# CHARLES ALLEN BENNETT et al.

## vs.

# ST. PAUL'S EVANGELICAL LUTHERAN CHURCH OF BALTIMORE CITY et al.

*Consolidation of Churches—Validity of Proceedings—Assent of Members.*

Under Code, Art. 23, Sec. 89, authorizing any corporation formed for a religious purpose to unite with one incorporated for a similar purpose, with the assent of "a majority of the members," and Code, Art. 23, Sec. 17, providing that "any measure within the powers of a majority of the members," may be validly passed by a majority of a quorum, consisting of a majority of all the members, present in person or by proxy, it is sufficient that a majority of such members of a church as participate, in person or by proxy, in the voting on the question, vote in favor of consolidation with another church.      p. 345

Provisions of a church charter forbidding voting by proxy in the election of a pastor, and requiring the votes of two-thirds of the members for such a choice, for the amendment of the charter, or for an authorization to the trustees to dispose of any church property, do not apply to the vote or procedure by which consolidation with another church may be effected.  pp. 343, 346

Independently of statute, a majority vote at a valid congregational meeting, with a qualified quorum present, is sufficient to pass any measure upon which the meeting is competent to act.      p. 345

That, at a meeting of a church congregation, the terms of a proposed merger with another church were stated as being that the two churches should be consolidated under the name and constitution, and retain the pastor and council, of the other church, and that the councils of both churches should serve as a united body until the next annual election, when two elders and two deacons should be chosen from the church which was holding the meeting, and that thereafter no distinction should be made between the two congregations, was sufficient basis for a vote at that meeting in favor of the merger.      p. 346

Under Code, Art. 23, Sec. 99, authorizing a corporation to acknowledge any instrument by its attorney appointed under its seal, a certificate of the consolidation of two religious corporations may be validly acknowledged by an attorney duly appointed by each of the corporations.                              p. 347

*Decided January 11th, 1921.*

Appeal from the Circuit Court of Baltimore City (STANTON, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Eli Frank* and *C. John Beuwkes,* for the appellants.

*Charles T. Reifsnider* and *Edwin C. Irelan,* for the appellees.

URNER, J., delivered the opinion of the court.

The bill of complaint in this case was filed by three members of the Evangelical Lutheran Church of the Atonement, and the purpose of the suit is to have the recent consolidation of that church with the St. Paul's Evangelical Lutheran Church of Baltimore City decreed to be illegal and void. The ground upon which this result is sought to be accomplished is the alleged failure of a majority of the qualified members of the Church of the Atonement to assent to the consolidation in accordance with the provisions of the charter of the church and of the general statute under which it was incorporated. No question is raised as to the validity of the action taken by the congregation of St. Paul's Church with a view to the consolidation. The vote of its members on the question was unanimous.

It is unfortunate that the efforts made on both sides to adjust this controversy without resort to litigation were not successful. Our discussion of the case will be confined to the strictly legal questions involved.

Section 89 of Article 23 of the Code of Public General Laws provides that any corporation formed for a religious object may unite with one incorporated for a similar purpose "provided that the majority of the members of each of the corporations forming such union shall assent thereto," and that "such union or consolidation shall be made upon such terms and conditions and shall have such name as shall be agreed upon by said corporations forming such union; a certificate of such union or consolidation and the provisions thereof shall be executed by the said corporations and be acknowledged and recorded as other certificates of incorporation."

The Code provisions on the subject of a quorum and determining vote are that "a majority in number of all the members (present in person or by proxy) shall constitute a quorum"; and that except where it is by the article otherwise provided, "the vote of a majority of any quorum shall be sufficient to elect and to pass any measure within the powers of the holders of a majority of all the shares, or of a majority of members." Code, Art. 23, Sec. 17.

The charter regulations of the Church of the Atonement are consistent with the statutory provisions just referred to, except that the charter forbids voting by proxy in the election of a pastor, and requires the votes of two-thirds of the members present for such a choice, or for an amendment of the charter, or for an authorization to the trustees of the church to purchase, sell, lease, mortgage or otherwise dispose of any church property. There are no provisions in the charter in regard to the vote or procedure by which a consolidation with another church may be effected.

It appears that the proposal for the consolidation with which we are concerned in this case originated in the Church of the Atonement. According to the minutes of a meeting of the council of St. Paul's Church, held on April 7, 1919, a committee from the Church of the Atonement came before the council at that time with the following proposition: "That

in the event St. Paul's congregation decides to leave its present location to unite with the Church of the Atonement, the merged congregation to retain the name and constitution of St. Paul's, also the pastor and church council." The minutes then proceed as follows: "After careful deliberation it was decided by the council to recommend to the congregation the acceptance of this invitation, and at as early a date as possible to complete the merger. When such merger is completed, the two councils shall serve as a united body until the annual election in January, when two elders and two deacons shall be elected from the former Church of the Atonement. After this first election no distinction shall be made between members of the former churches."

On July 28, 1919, a special meeting of the congregation of the Church of the Atonement was held, after due notice to the members, for the purpose of taking action on the proposal for consolidation with St. Paul's Church. It is stated in the minutes of this meeting that "there were 94 members present and 64 voting proxies, making a total of 158." The terms of the proposed merger were read to the congregation. The testimony shows that the terms thus read were those set forth in the minutes of the council of St. Paul's already quoted. After some discussion the following resolutions were adopted: "Resolved, That the Congregation of the Evangelical Lutheran Church of the Atonement hereby accepts the terms of the merger as given us by St. Paul's Lutheran Church, with the suggestion that, if possible, we would like to see the name 'Atonement' incorporated in the name for the new congregation"; and "That the special property committee be and it is hereby authorized to carry out all the necessary details of the merger, including transfer of property, etc." The vote on these resolutions, as the minutes of the meeting recite, was one hundred and eighteen, including sixty-four proxies, in the affirmative, and thirty-three in the negative. Seven of the members in attendance did not vote. At that time the Church of the Atonement had a total of two

hundred and forty-three members. There is a provision in the charter of the church to the effect that only those members shall be entitled to vote at church elections "who have partaken of the Lord's Supper within the previous year (unless providentially prevented), and who contribute according to their ability and engagements to all its necessary expenditures." Those having the standing thus described were known as communicant members, and it is proven that there were one hundred and sixty members of that class. The total membership of two hundred and forty-three included eighteen minors, and nine of these were listed as communicants.

The contention is that a majority of all the adult communicant members of the church must have voted in person at the meeting in favor of the consolidation in order to make it valid, and that no such majority assented in that way to the union. Upon this theory it would have been necessary that seventy-six adult communicants should have personally voted in the affirmative on the question, whereas there were only sixty-six members of that class at the meeting. But the law under which the church was incorporated provides that a consolidation may be accomplished with the assent of a "majority of the members," and that "any measure within the powers of a majority of the members" may be validly passed by a majority of a quorum, consisting of a majority of all the members present in person or by proxy. Independently of statute, a majority vote at a valid congregational meeting, with a qualified quorum present, would be sufficient to pass any measure upon which the meeting was competent to act. *Zeiler* v. *Central Ry. Co.*, 84 Md. 304; 14 *C. J.* 920. The Code definitely authorizes the use of proxies at such a meeting for voting purposes and for providing a quorum. Including the sixteen adult communicants who were present by proxy, there were eighty-two members of that class in attendance at the meeting, and a quorum did not require that number. If, therefore, only adult communicants are to be

regarded as qualified to vote on the consolidation, the sixty votes cast by such members in favor of the proposal were ample for its valid adoption. They were a large majority of the adult communicants who participated in person or by proxy in the voting on that question. But there would be the same result if the whole membership of the church should be considered to possess the proper qualifications for voting on the merger. In that event a quorum would be one hundred and twenty-two members present at the meeting in person or by proxy, and there were in fact one hundred and sixty so present, of whom one hundred and eighteen voted for the consolidation upon the terms proposed. The admission or exclusion of the few votes cast by members not yet of legal age makes no material difference in the result. Upon any of the suggested theories as to the voting qualifications of the members, our conclusion must be that the vote on the merger resulted in its approval by a substantial and legally competent majority.

It is urged that the full terms of the consolidation were not approved by the congregation of the Church of the Atonement, and that hence the merger was not validly authorized by that body. Reference has been made to the fact that the terms which the congregation accepted were that the two churches should be consolidated under the name and constitution and retain the pastor and council of St. Paul's Church, and that the councils of both churches should serve as a united body until the next annual election, when two elders and two deacons should be chosen from the Church of the Atonement, and after that election no distinction should be made between the two congregations. This was a full and sufficient statement of the terms and conditions of the merger to which the congregations gave their assent.

Another contention is that the merger constituted an amendment of the constitutions of the uniting churches and involved a disposal of their property, and that under the constitution of the Church of the Atonement, a two-thirds

vote of the members present at a congregational meeting was necessary to accomplish such results. The Public General Law of the State, under which the church was incorporated, prescribes the method by which its consolidation with another religious corporation may be effected. The church constitution makes no reference to that subject. Continued separate existence of the church was contemplated by the provisions of its constitution. But its consolidation with another church results in the substitution for both of a new corporation in which all their property rights become vested by operation of law. *Code,* Art. 23, Sec. 89. If it be assumed that effect could be given to provisions of the church constitution which placed greater restrictions on a proposed merger than those imposed by the law of the State, we are here dealing with a situation in which no such conflict exists and the requirements of the law have been fulfilled.

A question was raised as to whether the certificate of consolidation was properly acknowledged. This act was performed by an attorney duly appointed by each of the constituent corporations, and such method is expressly authorized by Section 99 of Article 23 of the Code.

The court below sustained the validity of the merger and dismissed the bill of complaint, and we concur in that disposition of the case.

*Decree affirmed, with costs.*

---

In disposing of a motion to modify the foregoing opinion, the court, by URNER, J., filed the following memorandum:

A motion to modify the opinion in this case has been filed by the appellants on the theory that the decision may possibly be construed as having the effect of recognizing the existence of a right on the part of the majority of a quorum of stockholders or members to provide for the issuance of bonds

to be secured by mortgage of corporate property under Section 7, sub-section (5) of Article 23 of the Code, and to take various important actions under other Code provisions to which the opinion did not refer. The decision was limited to the question whether the majority of the members of a certain religious corporation, who were present, in person or by proxy, in such number as to constitute a quorum, at a duly called meeting, could and did validly authorize a consolidation of their church with another corporation of the same nature, in view of the provisions of Sections 17 and 89 of Article 23 of the Code. In deciding that question in the affirmative the court found no occasion to pass upon the right of the majority of a quorum to act under powers conferred by Code provisions other than those relating to the consolidation of religious corporations. The right of the majority of a quorum "to pass any measure within the powers of a majority of the holders of all the shares or of a majority of all the members," under Section 17 of Article 23, is expressly stated therein not to exist "in cases in which it is by this Article provided that the vote of a certain number of shares or of a certain number of members is requisite." Whether or not the specific powers mentioned in the motion to modify the opinion are within the terms of the quoted exception to the general provision as to the rights of the majority of a quorum, is a question which is not involved in this case and upon which, therefore, the views of the court were not expressed.