# State *ex rel.* Meyer, *v* Greene, Judge of Probate. and State *ex rel.* Woodward *v.* Skeggs, Judge of Probate.

*Mandamus to Compel Issue of Saloon License. Prohibition Law.*

(Decided April 9, 1908.  46 South. 268.)

1. *Statutes; Prohibition Law; Construction; Election; Words and Phrases.*—Under section 13 of the state prohibition law the word, "election,' means an expression of the will of the majority, without reference to whether the election is valid or not, and the constitutionality of the local option law is immaterial, under such section, in determining when the prohibition law would go into effect.

2. *Constitutional Law; State Constitution a Limitation and not a Grant.*—The state constitution is not a grant of power to the legislature, but a limitation upon its powers.

3. *Same; Effect.*—The mandates of the state constitution are supreme and binding on the legislative, executive and judicial departments of the state government.

[State ex rel. Meyer v. Greene, Judge of Probate, and State ex rel. Woodward v. Skeggs, Judge of Probate.]

4. *Same; Statutes; Judicial Authority.*—If an act contravenes no provision of the organic law, the judiciary is without power to review and determine the wisdom and propriety of legislative enactments, that being peculiarly and exclusively within the right of the legislative department.

5. *Same; Presumption of Validity; Burden.*—Every legislative enactment is presumed to be constitutional and valid and the burden is on him who asserts the contrary to show the same by proof beyond reasonable doubt

6. *Same; Construction of Constitutional Provisions; House.*—The word, house, is used in the constitution in varying senses and refers to three entities; the place of legislative session; the total elected membership of the one or other branch of that department, and the body, whether upper or lower, as legally constituted to perform the legislative functions.

7. *Statute; Enactment; Special Session; Necessary Vote.*—Under section 52 and 76 and sections 125, 173, 284 and 286, a two-thirds majority of a quorum of each house is sufficient to enact legislation at a special session, on subjects not designated in the proclamation calling the extra session.

8. *Same; Necessary Vote on Preliminary Matters.*—A two-thirds vote of each house is not necessary on preliminary matters, such as the introduction of bills, etc., looking to legislation on subjects not mentioned in the proclamation, but is necessary only on the final enactment of such legislation.

9. *Constitutional Law; Construction; Meaning of Words Repeated.*—Where the meaning of a word or phrase used in the constitution or a statute is definite and clear in one instance, and is repeated in another place where it is susceptible of two meanings, it will be presumed to have been employed in the same sense as in the first instance.

10. *Statutes; Enactment; Journal; Constitutional Provision.*—Under section 66, Constitution 1901, the fact that the signing was in the presence of the house need not be entered on the journal; all that is necessary is that the mere act of signing be shown, as the journal is the official narrative of the proceedings of the respective houses, and the existence of a journal implies the presence of a properly organized house.

11. *Same; Signing in Presence of House; Construction of the Record.*—The requirements of section 66, Constitution 1901, are fully met where the journal records a continuous session of a legally authorized house covering proceedings both before and after the signing of a bill in question, and shows the dispensing by a necessary vote of the reading at length of certain enumerated bills, among which was the one in question.

12. *Same; Effect of Singular Form; "Said Bill;" Use of Period.*—The journal entry recites the reading and signing of certain "House Bills the title of which are set out in the foregoing message from the house. The reading of said bill having been dispensed with by a two-thirds vote etc." Held, the use of the singular instead of the plural form, modified by the word, "said," shows that no particular bill mentioned therein had its reading dispensed with, but refers to

all the house bills mentioned, and the error, if any, is self correcting, when the phrase is considered as a whole, for the period after the word, "house," will not be permitted to separate the subject from its relation to the subject matter to which it obviously refers.

13. *Same; Title of Act; Constitutional Requirement; Sufficiency; Exceptions.*—The act commonly known and called the State Prohibition Law, is not violative of section 45, Constitution 1901, as the only subject of the act is the prohibition of prescribed dealings with certain liquors and beverages, with certain exceptions which reduce the effect of the statute but does not add thereto.

14. *Same; One Subject.*—The general prohibition act is not unconstitutional on the grounds that the exceptions created by the act provide methods whereby those exceptions may be availed of without violating the major purposes of the act, nor because it contains the subject of regulation as well as the subject of prohibition of dealings in intoxicants mentioned in the title, since, in a sense, regulations is accomplished by the act but it is only a method by which the universal prohibition contained in the act is bereft of its penalizing qualities to those who comply therewith.

15. *Same; Local Law; State Prohibition Law.*—The state prohibition law is a general and not a local law, although it becomes operative in certain counties in the state at one date, and in the others on a different date.

16. *Intoxicating Liquors; State Prohibition Law; Validity; Police Power.*—Under the police power of the constitution the legislature has the right to prohibit dealings in intoxicating liquors.

First case, appealed from Birmingham City Court.

Heard before Hon. CHARLES A. SENN.

Second case, appealed from Morgan Circuit Court.

Heard before Hon. D. W. SPEAKE.

Mandamus by the state, on relation of M. E. Woodward, against William E. Skeggs, judge of probate, and by Ben Meyer against Samuel E. Green, judge of probate, to compel the issuance of licenses to sell liquor. From judgments denying peremptory writs, plaintiffs appeal. Affirmed.

In the first appeal, Tillman, Grubb, Bradley & Morrow, and Gregory L. Smith, represented the appellant and filed exhaustive briefs. This record was used by permission in the United States Court on a hearing then involving a similar question, and the briefs were misplaced. This is true of all the briefs in the case. In the

second case, George W. Parker and John C. Eyster, represented the appellants and filed similar briefs.

ALEXANDER M. GARBER, Attorney General, THOMAS W. MARTIN, Assistant Attorney General, and SAMUEL B. WEAKLEY, with BROWN & KYLE, represented the appellees, and filed briefs.

McCLELLAN, J.—These appeals, involving identical questions, were argued and submitted together, and are presented from judgments denying peremptory writs of mandamus to compel the judges of probate of Morgan and Jefferson counties to issue to the respective petitioners licenses to sell spirituous, vinous, or malt liquors. The petitioners assume that what are commonly called the state prohibition law and the local option law are barriers to the granting of the relief sought, unless these laws are constitutionally invalid. The petitioners therefore assail both enactments upon grounds of asserted unconstitutionality, and these objections will be stated and the points taken decided in so far as they attack the state prohibition law, omitting entirely consideration of those assigned against the validity of the local option law, for the reason that section 13 of the former act, if otherwise valid, became effective in Morgan and Jefferson counties, where election were held prior to December 12, 1907, on January 1, 1908. In denial of the correctness of this conclusion, counsel for the appellants insist that the term "election," as used in section 13, contemplates a "valid" election, under a valid, as distinguished from an "invalid," election resulting in those counties, if the local option law is unconstitutional.

As here important, section 13 reads: "Provided that in all counties in which an election shall have been held on or before the 12th day of December, 1907, under the

provisions of the county local option law, approved February 26th, 1907, to determine whether or not liquors shall be sold therein, under any act of the Legislature of Alabama heretofore passed, at which election it shall have been determined that liquors shall not be sold. * * *" To accord to this proviso the construction argued for appellants, it is perfectly evident that the quoted provision must be taken to provide that the state prohibition law should become effective on January 1, 1908, in those counties where under the local option law the sale of liquors would be legally prohibited. In other words, that the condition to the going into effect of the state prohibition law on January 1, 1908, should be that another law mentioned, having a like effect, would prohibit the sale of liquors therein on and after that date. We can draw from the section no such intent. On the contrary, the condition borne by the proviso quoted is clearly stated, in short, to be an expression, within its terms, of the will of the majority on the question of sale vel non of liquors in the described territory. If it had been the purpose to declare, as appellants contend, surely the Legislature would not have committed the announcement of that purpose to a phrasing that refers only to the election and not to the legally efficacious operation and effect of a then existing enactment. And it may be added that, if only an election held under a valid law was contemplated, why was not the apt word "valid" employed to state the intent?

It is conceded that elections under the local option law were held, in Morgan and Jefferson counties, on or before December 12, 1907, and that the majority vote in each was against the sale of liquors in those counties. It follows, we think, that the condition to the going into effect on January 1, 1908, of the state prohibition law in

[State ex rel. Meyer v. Greene, Judge of Probate, and State ex rel. Woodward v. Skeggs, Judge of Probate.]

the counties of Morgan and Jefferson, does not import more than an election—an expression of the popular will—which was had in both the counties named. Hence whether the local option law be valid or invalid is not a vital inquiry on this appeal.

In entering upon a properly invited investigation of the constitutionality of legislative acts, this court has, as it should, borne constantly in mind: First, that the Constitution is a limitation, not a grant, of power; second, that its mandates are the supreme law to the legislative, executive, and judicial departments of this government; third, that the propriety and wisdom of enactments by the lawmakers are questions peculiarly and exclusively within the decisive right of that department, and, if the act under investigation contravenes no provision of the organic law, the judiciary is without rightful power to review the legislative determination of the wisdom and propriety of the action taken, and, fourth, that every enactment is presumptively constitutional, and therefore valid, and he who assails it assumes the obligation to demonstrate beyond a reasonable doubt its violation of the fundamental law.

The state prohibition law is a product of the special session, 1907, of the Legislature, which convened in obedience to the proclamation of the Governor. This law was not within those subjects of legislation specifically enumerated in the proclamation as requiring, in the judgment of the executive, the more immediate action of the Legislature. The matter of the prohibition or regulation of the sale of intoxicants within the state at that special session was subject to the conditions defined by section 76 of the Constitution of 1901, which is: "When the Legislature shall be convened in special session, there shall be no legislation upon subjects other than

those designated in the proclamation of the Governor calling such session, except by a vote of two-thirds of each House. Special sessions shall be limited to thirty days." Appellants predicate their primary objection to the validity of the act upon this section, and insist that the term "House," as therein employed, intends the entire elected membership of each branch of the Legislature, as distinguished from a "quorum," expressly authorized by section 52 of the Constitution of 1901 to transact business; it being uncontroverted that in the lower branch the vote in favor of the law was less than two-thirds of the entire membership of that body.

The word "House" repeatedly occurs in the organic law, and, as far as we are now advised, has reference, in varying senses, to three entities, viz., the place of legislative session, the total elected membership of the one or the other branch of that department, and the body, whether upper or lower, as legally constituted to perform its legislative functions. An examination of the whole instrument, in obedience to the well-recognized rule of construction, shows, we think, a clear purpose, on the part of the makers of the Constitution, to leave no doubt in which of the two latterly mentioned senses the term, in the connection employed, was intended to be used. Section 52 provides that a "majority of each House shall constitute a quorum to do business. * * *" Certainly the word "House," as thus employed, means the entire membership of each body. It denotes the maximum number of members of each body of which a majority shall constitute the House for the transaction of business. After so expressly providing, and unless a greater proportion of the respective membership of the branches is required by unmistakable language, the term "House" can only intend such number present or voting,

as the case may be, as would make a quorum for the stated transaction of business. Otherwise stated, the word "House" imports, unless qualified by the context, a "quorum," as defined by section 52. In at least four instances the Constitution specifically provides that a named proportion of the entire elected membership of each House shall favor legislation, along stated lines, as a prerequisite to the valid enactment of the proposed law. These instances are to be found in sections 125, 173, 284, and 286. The instrument abounds in other instances where the word "House" is employed without the qualification just mentioned. From this it necessarily results that, in order to adopt the construction of section 76, for which appellants contend, we must interpolate the expression present in the four sections above enumerated. Of course, this cannot be done without violating, in this regard, the manifest intention of the makers of the Constitution. This question, in substance, has received the consideration of the courts of last resort in other jurisdictions, and we find in them abundant authority, proceeding upon sound reason, for the conclusion reached by us. It will suffice to merely cite them: *Southworth v. Railway,* 2 Mich. 287; *State v. McBride,* 4 o. 303, 29 Am. Dec. 636; *Zeiler v. Railway Co.,* 84 Md. 304, 35 Atl. 932, 34 L. R. A. 409; *Atkins v. Phfillips,* 26 Fla. 281, 8 South. 429, 10 L. R. A. 158; *Green v. Weller,* 32 Miss. 650.

It is further urged that the term "legislation," as employed in section 76, embraces every constitutionally required step in the enactment of a proposed law, and hence that the provision for a two-thirds vote of each House applies to forbid even the introduction of a bill not within the subjects specifically designated in the proclamation, unless that proportion of the respective

Houses sanction it. The word "legislation" occurs but twice in the Constitution. It is employed in sections 76 and 246. In the latter it is used in this context: "No railroad   *   *   *   shall have the benefit of any future legislation by general or special laws.   *   *   *" Obviously, as thus employed, the term intends an enactment and not as descriptive of the processes by or through which laws are perfected by constituted authority. It is a familiar rule of construction that where, in a constitution or statute, a word or phrase is repeated, and in one instance its meaning is definite and clear, and in the other it is susceptible of two meanings, it will be presumed to have been employed in the former sense, unless a contrary intent appears.—2 Lewis, South. Stat. Const. § 399; *Pitte v. Shipley*, 46 Cal. 160; *James v. Dubois*, 16 N. J. Law, 293; *Lehman v. Robinson*, 59 Ala. 235. Granting that the term as used in section 76 is susceptible of the construction contended for by appellants, the application of the rule stated is conclusive that the word was intended in section 76 to bear the same meaning as expressly appears to have been intended in its employment in section 246, since there is nothing in section 76 to indicate any purpose to clothe the term with a different meaning. To meet the requirements of the proviso in section 76, only one vote, in each House, is contemplated; and it would be far from accord with the general purpose underlying the section to adopt a construction necessitating that vote upon any other occasion than on final passage, in each House, of the proposed measure. Furthermore, reference to sections 61, 62, and 63, as well as others in the organic law, indicate that the Constitution makers choose the word "bill" to distinguish between the proposed measure in process of enactment and an enactment.. We therefore conclude

17 R

that the intent expressed by section 76 is to prohibit legislation—the enactment of a law—upon subjects outside those designated in the proclamation unless two-thirds of each House favor the enactment.

Section 66 provides: "The presiding officer of each House shall, in the presence of the House over which he presides, sign all bills and joint resolutions passed by the Legislature, after the same shall have been publicly read at length immediately before signing, and the fact of reading and signing shall be entered on the journal; but this reading at length may be dispensed with by a two-thirds vote of a quorum present, which fact shall also be entered on the journal." An examination of the Senate journal for the twelfth day of the special session shows that the Senate met pursuant to adjournment, with the president pro tem. presiding; that the entire membership of the Senate was present; that the ordinary routine of procedings in that body was had; and that before any adjournment or recess a message from the House of Representatives was received by the Senate, transmitting for the signature of its presiding officer 10 bills, among them this bill under consideration. Immediately succeeding this message, under the heading "Signing of Bills," appears this recital: "The president pro tem. and presiding officer of the Senate, immediately after their titles had been publicly read at length by the Secretary, signed the above House bills, the titles of which are set out in the foregoing message from the House. The reading of said bill having been dispensed with by a two-thirds vote of a quorum of the Senate present."

Counsel for the appellants take the objection that the "fact" of the signing of this bill in the presence of the Senate does not appear from the journal. This objec-

tion is predicated upon the interpretation of the word
"fact" to be:   That the word embraces, by reference,
not only the act of signing, but also that it was done in
the presence of the House.   Only the fact of signing in
that regard is required to be entered in the journal. The
journal is the official narrative of the proceedings of the
respective Houses.—Const. § 55; 4 Words & Phrases,
pp. 3821, 3822.   Unless legally organized to legislative-
ly act, no journals of the proceedings of the Houses can
exist; nor can proceedings had properly pass into the
journals unless the Houses are constitutionally organ-
ized.   It follows, then, that what is required to be set
forth in the journals must pertain to the Houses in ses-
sion, duly organized as provided in the organic law.   So
interpreted, the term "fact" comprehends only the act
of signing bills and joint resolutions, and not the sur-
roundings at the moment the act is done, since the
Houses must be present to warrant the existence of the
journals.   This construction is further emphasized in
correctness by the concomitant requirement that the
bills and joint resolutions "shall be publicly read at
length immediately before signing," for certainly no one
could be found to assert that this reading is commanded,
unless properly dispensed with, in a presence other than
that of the House.   We therefore conclude that the
"fact," with respect to the signing, required to be enter-
ed in the journal, is the act of signing the bill and joint
resolutions passed as provided.   However, if this con-
struction was not adopted, and the term "fact" was held
to require that the journal show the signing to have been
in the presence of the House, the provision would be, in
our opinion, met in this instance, where the journal nar-
rates a continuous session, legally organized, of the Sen-
ate covering proceedings both before and after the sign-

ing of this with other bills and also the dispensation, by the necessary proportionate vote, of the reading at length of the bills enumerated, with their titles, in the message from the House of Representatives.

Again, it is insisted that it does not appear by the journal, quoted above, that of the 10 bills coming over from the lower branch the reading at length of the prohibition bill was dispensed with. It is true the recital in the journal is that this action was taken with respect to "said bill"; the singular, instead of the plural, being used. There is no merit in the point. The word "said" is a word of reference, and means, as here used, "before mentioned," "aforesaid." The word "bill" cannot be interpreted independent of the word "said," and, when so considered, "bill," though employed in the singular, is colored by the antecedent to which "said" refers it. The reference is to the above House "bills," and among them is the prohibition bill. The error in the use of the singular for the plural is self-correcting when the clause of which the phrase containing "bill" is considered as a whole. The period used after "House" will not be permitted to separate the phrase from its relation to the subject-matter to which it obviously refers.

The title of the bill in question is: "An act to prohibit the manufacture, sale, barter, exchange, giving away to induce trade, the furnishing at public places or otherwise disposing of any alcoholic, spirituous, vinous or malt liquors, intoxicating bitters or beverages, or other liquors or beverages by whatsoever name called which if drunk to excess will produce intoxication, except the sale of alcohol in certain cases upon certain conditions, and except the sale of wines for sacramental purposes." Section 1 declares, in the broadest terms, the unlawfulness of such dealing or use, as the title pre-

scribes, in the liquors or beverages described, except as
latterly provided in the act.　Sections 2, 3, 4, 5, 6, 7, 8,
9, and 12, provide the exceptions mentioned in section 1
of the act, and prescribe the method to be pursued to
effect the dealing, with respect to the liquors and bever-
ages enumerated within the exceptions created to the
condemnation of section 1.　Section 10 fixes the penal-
ties for violations of the provisions of the act.　Section
11 treats of repeal. . It provides, by proviso to a general
repealing clause, that the act shall not operate to repeal
any local or special act of the Legislature prohibiting
the sale or other disposition of the liquors mentioned in
section 1, but expressly continues such laws in force and
creates a right of election to prosecute an alleged offen-
der under the local or special laws referred to or under
this act; prosecution under one, however, barring that
under the other for the same offense.　Section 13 relates
to the time when the act shall go into effect.

, The Constitution, by section 45, provides that: "Each
law shall contain but one subject, which shall be clearly
expressed in its title.　*　*　*" In *Ballentyne v. Wick-
ersham*, 75 Ala. 536, this court, through Staone, J., con-
strued and defined the provision "which shall be clearly
expressed in its title," and laid down the generally rec-
ognized and unquestionably sound rule for guidance in
dealing with the sufficiency of titles to legislative enact-
ments to be: "That the title of a bill may be very gen-
eral and need not specify every clause in the statute.
Sufficient if they are all referable and cognate to the
subject expressed.　And when the subject is expressed
in general terms, everything which is necessary to make
a complete enactment in regard to it, or which results
as a complement of the thought contained in the general
expression, is included in and authorized by it.　*　*　*

The 'subject' * * * may be as broad and comprehensive as the Legislature may choose to make it."

The subject of this bill, and its only subject, is the prohibition of prescribed dealing with certain liquors and beverages. There is no mistaking the subject treated by the act as announced by the title. The exceptions provided in the body of the act, and to which general reference is made in the title, are necessarily cognate to the subject of the enactment. The office of the exception is to take out of the influence of section 1 of the act certain classes of dealings that, without these exceptions, would fall within the provisions of section 1. These exceptions do not enlarge the scope, purpose, or subject of the act. They add nothing thereto. Indeed, it would be a patent contradiction to say that an exception, which reduces the whole, affects to add thereto.—*State. v. Schlitz Brewing Co.,* 104 Tenn. 715, 59 S. W. 1033, 78 Am. St. Rep. 941.

Perhaps, after what we have said in this connection, it is unnecessary to treat the point to be now stated. However, we do so: Counsel for appellants assert that, because the exceptions created by the act provide the methods whereby those exceptions may be availed of without violating the major purposes of the act, the act contains the subject of regulation, whereas the title only foreshadows legislation in prohibition of dealings in intoxicants. The case of *Miller v. Jones,* 80 Ala. 89, decides that "regulation" and "prohibition" are distinct and incongruous subjects of legislation. But this holding is not impinged here. The title of the act purports to announce that the act to follow will treat of prohibition of the sale, etc., of liquors, except in certain cases. These exceptions, which, as indicated, merely limit the field of operation of the prohibition declared, are created

by providing that certain dealings, accomplished after prescribed methods, are not prohibited. The power to legislate includes necessarily the power, within legal limit not necessary to be now considered, to select the object and scope of an enactment and to define what of a broader subject shall not come within the condemnation of the act for the purpose for which it is enacted. The Legislature exercised this power by exceptions and defined them with respect to particular kinds of liquors, to prescribe processes or methods of dealings therewith and to specified uses of certain liquors, and to enforce the observance of these exceptions, together with all provisions of the act, affixed penalties. Accordingly, unless the methods or processes or the particular kinds of liquors or the specified use of certain liquors conform or are within the exceptions defined, any dealing in them is prohibited, not regulated. True, regulation presupposes the right to deal, but under this act the right to deal is wholly dependent upon compliance with requirements thereto which are plainly written in exemption of those who comply with them from the charge of a violation of the general prohibition declared by the act. In a sense, a regulation is accomplished, but that regulation is only a method by which the universal prohibition is bereft of its penalizing qualities by affording to him who complies the exemption stated. Intimately germane to the general purpose and effect in the creation of these exceptions and in conformity to them are those provisions requiring the filing and recordation of statements and prescriptions mentioned in the act. These are important in the enforcement of the observance of the methods to be pursued in order to enjoy the immunity carried by such dealings as the exceptions provide, and also to detect any violation of the prohibition which

is infracted unless the dealing is within the exceptions created. We therefore affirm the constitutional sufficiency of the title of the act as well as the presence of but one subject in the enactment itself.

It is further objected that the act is invalid because it is a local, and not general, law, as those laws are defined in section 110 of the Constitution. The argument in support of this objection takes the form of an insistense that *Covington v. Thompson,* 142 Ala. 98, 38 South. 679, and other decisions of this court following it, a resume of which will be found in the recent case of *the State ex rel. v. Weakley,* 153 Ala. 648, 45 South. 175, are unsound, and that those cases should be overruled. It seems to be, in effect, conceded by counsel for appellants, as is indeed the case, that, unless these adjudications are overruled, they are decisive, on this point, of the constitutionality of the act. After a careful reconsideration of these cases and of the arguments assailing them on these appeals, we reaffirm the principle controlling the questioned cases, and adopt them as authority for our conclusion that the state prohibition law is a general, and not a local, law. The reasoning of the leading case will suffice without rehearsal here.

It is perfectly apparent from the whole act that the Legislature in good faith, wrote to a state-wide prohibition of certain dealings in intoxicants. On January 1, 1909, a reasonably near and definite date, the law will be actually effective from border to border of the state. While in 1908 the law will not be operative in every county in the state, but will, beginning with the succeeding year, be operative throughout the whole state, merely postpones for such definite and reasonably limited period the partial effectiveness of the law, yet the law is a state law, applicable in due season to every coun-

ty in the state, thus clearly coming within the principle laid down in *Covington v. Thompson, supra.* The case of *Brown v. Porter,* 145 Ala. 541, 40 South. 144, is more in point, as to fact, than any of the others, and it was cast in decision by the principle announced and applied in *Covington v. Thompson, supra.*

That the police power of a state may be appropriately exercised in the prohibition of dealings in intoxicants has been too long settled to now admit of further consideration with a view to its denial.

The other questions argued by counsel pertain to the administrative features of the prohibition law, not leading to constitutional invalidity, which will be properly reviewed when a violation of the provisions of the law, in a concrete case, is presented.

We therefore hold that the act is not subject to the objections to constitutionality urged on either of these appeals.

The respective judgments appealed from are hence affirmed.

Affirmed.

DOWDELL, ANDERSON, and DENSON, JJ., concur.