David C. Turner, the appellant, was convicted of theft of property in the first degree and was sentenced to seven years' imprisonment. He was also convicted of attempted theft of property in the first degree and was sentenced to a concurrent term of seven years' imprisonment. He raises four issues on this appeal from those convictions. Each argument involves the appellant's contention that his prosecution should have been dismissed due to the State's failure to comply with the Interstate Agreement on Detainers Act.
The Alabama Uniform Mandatory Disposition of Detainers Act, adopting the Interstate Agreement on Detainers Act (IAD), is found in Ala. Code 1975, § 15-9-80 through § 15-9-88. The IAD is codified in § 15-9-81. Article III provides, in pertinent parts:
 "(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, . . . on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment. . . .
 "(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate [of that official prepared in accordance with paragraph (a)] to the appropriate prosecuting official and court by registered or certified mail, return receipt requested."
(Emphasis added.) Section 15-9-82(a) provides:
 "Any person who is imprisoned in a penal or correctional institution of this state may request final disposition of any untried indictment, . . . pending against him in this state. The request shall be in writing addressed to the court in which the indictment, information or complaint is pending and to the district attorney charged with the duty of prosecuting it, and shall set forth the place of imprisonment."
Section 15-9-83 provides:
 "The request shall be delivered to the warden or other like official having custody of the prisoner, who shall forthwith:
 "(1) Certify the term of commitment under which the prisoner is being held, the time already served on the sentence, the time remaining to be served, the good time earned, the time of parole eligibility of the prisoner and any decisions of the state board of pardons and paroles relating to the prisoner; and
 "(2) Send by registered or certified mail, return receipt requested, one copy of the request and certificate to the court and one copy to the district attorney to whom it is addressed."
(Emphasis added.)
 I.
The appellant argues that the issue in this case concerns the alleged negligence of the federal prison officials in the sending state who failed to send timely notice of the appellant's request for a speedy disposition of the detainers to the district attorney and circuit court of Houston County. However, we view the issue in this case as whether the appellant carried his burden of proving that he fully complied with the *Page 927 
requirements of the Alabama Uniform Mandatory Disposition of Detainers Act.
A hearing was held on the appellant's motion to dismiss on December 19, 1989. The facts relevant to the disposition of this case are listed below in chronological order. Almost all of these facts were introduced at the hearing through the undisputed and uncontested oral testimony of the appellant.
 July 8, 1988: The appellant was arrested in Houston County, Alabama. He was subsequently turned over to the F.B.I. in connection with bank fraud.
 August 19, 1988: The appellant was indicted for theft in Houston County, Alabama.
 March 24, 1989: The appellant was sentenced in Birmingham, Alabama, for his federal guilty plea conviction of bank fraud.
 April 4, 1989: The appellant was transferred from a federal prison in Talladega, Alabama, to a federal prison in Petersburg, Virginia.
 April 7, 1989: "Mrs. Holderfield," the appellant's case manager, advised the appellant that Alabama had outstanding detainers against him, and that the appellant would have to be transferred to a higher security facility.
 April 10, 1989: The appellant sent a "cop out" to Holderfield requesting that notice be sent to Alabama under the Interstate Agreement on Detainers "to activate them for disposal of the charge within the 180 days." A "cop out" is "an inmate request to a staff member to take some action."
 April 14, 1989: Holderfield informed the appellant that she had not sent the notices because he was being transferred and that it would be the responsibility of the prison to which he was transferred to send the notices.
 April 26, 1989: The appellant was transferred from Petersburg, Virginia, and arrived at the federal prison in Ashland, Kentucky, on May 1, 1989.
 May 2, 1989: Counselor Ron Moore advised the appellant that the detainers had been transferred from Petersburg, Virginia, to Ashland, Kentucky.
 May 5, 1989: The appellant gave a "cop out" to the officer on the first shift to deliver requesting that the notices be sent.
 May 8, 1989: The appellant was informed by counselors Moore and Patterson that the detainer notices had not been sent and that it would be the responsibility of the appellant's "unit team" to send the notices after he arrived at his unit team. The appellant requested that the notices be sent.
 May 10, 1989: The appellant sent a letter to the district attorney of Houston County requesting that he be brought to trial.
 May 19, 1989: The appellant was assigned to "J" unit. He requested his counselor, Roger Riggs, to send the notices. Riggs advised the appellant that the "proper procedure would be to turn in a written request and send it to the attention of the team."
 May 22, 1989: The appellant sent a "cop out" in "via Mr. Riggs to the team."
 May 30, 1989: At the appellant's first team meeting, he learned that his case manager, who was responsible for sending the notices, "had never put out those before and had no idea of what to do with them, but he would check and get back with [the appellant] about it."
 June 16, 1989: Case manager Barry Collie told the appellant that the notices had not been sent, "that they were still working on them."
 June 23, 1989: The appellant requested a "BP9" (Bureau of Prisons form 9, which is a request from inmates to wardens to review the actions, or inaction in this case, of a staff member) requesting the warden to review the inaction of the staff in not sending the detainer notices. It was decided that the appellant "should give them a couple of more weeks to get them finished and out."
 July 18, 1989: The appellant requested another BP9 and discussed the matter with case manager Collie. *Page 928 
 July 21, 1989: The paperwork was completed, signed by the appellant, and mailed.
 August 9, 1989: The District Attorney of Houston County received the paperwork mailed July 21. The cover letter informed the District Attorney that "under the provision of Article III of the Act, you have 180 days in which to bring Mr. Anders [the indictment indicates that the appellant used the alias of Joseph Christopher Anders] to trial from the date of receipt of this application [to bring to a conclusion pending charges in your jurisdiction for the charges of theft of property]."
 August 10 or 11, 1989: The District Attorney filed "the Forms VI and VII under the Uniform Disposition of Detainers Act with the prison official in Ashland, Kentucky." Form VI is titled, "Evidence of Agent's Authority to Act for Receiving State." Form VII is titled, "Prosecutor's Acceptance of Temporary Custody Offered in Connection With a Prisoner's Request for Disposition of a Detainer."
 August 16, 1989: The District Attorney was notified that "the prison official in Ashland did not receive Form VI." That form was mailed to the prison officials on this date.
 August 17, 1989: The Houston County District Attorney's office sent notice that it intended to take custody of the appellant. A trial date was scheduled for September 18, 1989.
 September 4, 1989: The appellant arrived in Houston County, Alabama.
October 4, 1989: The appellant was arraigned.
 November 7, 1989: The appellant filed a motion to dismiss alleging that he had not been brought to trial within the 180 days required by Article III of the Interstate Agreement on Detainers Act. This motion was scheduled "to be heard just prior to trial and if case not tried week of 11/13/89 then at 9:00 a.m. on 11/20/89."
 November 13, 1989: This was the first opportunity the appellant had for a jury trial. The case action summary shows that on this date, the case was transferred to the nonjury docket for December 19, 1989, and the motion to dismiss was to be heard "just prior to trial."
 December 19, 1989: The trial court held a hearing on the appellant's motion to dismiss. The trial court denied the motion. The appellant then was tried based on a stipulation of facts and convicted by the trial court sitting without a jury.
At the conclusion of the hearing, and after argument of the issues, the trial court stated:
 "My ruling on the motion to dismiss, based on the Interstate Detainer Compact, is a denial of the motion to dismiss.
". . . .
 "There are two bases: Number one, I am denying it based on the weight of the evidence due to the solely oral nature and the uncorroborated nature of the defendant's testimony.
 "Number two, based on my interpretation of the Alabama law that the actions of the Federal authorities at the Federal institution should not be attributed to the Houston County, Alabama, prosecutor, nor authorities, nor court;
 "And, number three, that the defendant was not prejudiced or otherwise adversely affected by the delay incurred due to the Federal authorities' inaction in forwarding the notice to Houston County, Alabama, any action by them after such notice was received."
We hold that the trial court properly denied the appellant's motion to dismiss even though the second reason stated by the trial court for denying the motion is an incorrect interpretation of the law. We find persuasive the case of Commonwealth v. Martens, 398 Mass. 674, 500 N.E.2d 282
(1986), cert. denied, 481 U.S. 1041, 107 S.Ct. 1982,95 L.Ed.2d 821 (1987):
 "Article III(b) specifies the manner in which the prisoner is to deliver the requisite notice [of the request for disposition of any untried charges on the basis of which a detainer has been lodged against the prisoner by another state]. He is to give or to send the notice in writing to the warden or other correctional official with custody over him. The appropriate *Page 929 
custodial officer then has responsibility for forwarding the prisoner's request to the appropriate prosecuting official and court in the receiving State, together with a certificate [containing other information concerning the prisoner's confinement]. . . . If the prisoner is not tried on the outstanding charges within 180 days after he has caused the appropriate authorities to be notified of his request for final disposition in accordance with the agreement, the charges are to be dismissed. Art. III(a). Art. V(c).
 "The Commonwealth correctly concedes that the 180-day period commences when a defendant files his request with the correctional authorities in the sending State, and not when those authorities forwarded the request to the receiving State. Although we have not had occasion to consider the question, we agree with the majority of jurisdictions that have addressed the issue that a prisoner need only transmit the written notice and request for final disposition to the appropriate custodial officials in order to fulfil completely his responsibility under the agreement. See, e.g., McCallum v. State, 407 So.2d 865, 869 (Ala.Crim.App. 1981); Rockmore v. State, 21 Ariz. App. 388, 390, 519 P.2d 877 (1974); Pittman v. State, 301 A.2d 509, 512-513 (Del. 1973); People v. Daily, 46 Ill. App.3d 195, 201-203, 4 Ill.Dec. 756, 360 N.E.2d 1131 (1977); Ward v. State, 435 N.E.2d 578, 581 (Ind.Ct.App. 1982); Burns v. State, 578 S.W.2d 650, 652
(Tenn.Crim.App. 1978). Cf. State v. Carroll, 4 Hawaii App. 573, 576, 670 P.2d 1290 (1983) (remanded for hearing on whether prisoner filed written notice and request for final disposition with authorities). We also agree with the result reached in the majority of cases that, should the custodial officials of the sending State fail or refuse to forward the request to the receiving State after receiving the prisoner's request, the receiving State, rather than the prisoner, is bound by the failure. See, e.g. Pittman v. State, supra; Ward v. State, supra; Burns v. State, supra. However, and of particular significance to this case, a prisoner seeking to benefit from the relief provided by the agreement must meet the burden of proving he has complied with the requirements of the agreement. See Williams v. Maryland, 445 F. Supp. 1216, 1220
(D.Md. 1978); McCallum v. State, supra; State v. Carroll, supra; Rhodes v. Commonwealth, 622 S.W.2d 677, 678 (Ky.Ct.App. 1981).
 "It is undisputed that Massachusetts [the receiving state] never received notice of a request by the defendant before the defendant submitted his motion to dismiss in July, 1984. The record shows that the California [the sending state] authorities had complied with the requirements of the agreement in so far as they had notified the defendant of the Massachusetts detainer lodged against him and informed the office of the district attorney that its detainer was on file. The defendant's sole proof that he complied with the requirements of art. III(b) consisted of: his verified statement that, on or about October 28, 1983, he sent the notice and request forms required by the agreement to the case records manager at the California facility where he was detained; his verified statement that, thereafter, in February and April of 1984, he sent written requests for information about his October request for a speedy trial; and copies of the forms and written requests he claims to have sent with no indicia of filing, such as date stamps, return receipts, or the like.
 "Implicit in the judge's decision on the defendant's motion to dismiss is a determination that the verified statements submitted by the defendant were not credible. The judge did not have to accept the allegations in the defendant's affidavits as true, even though nothing in the record directly disputed them. See Commonwealth v. DeChristoforo, 360 Mass. 531, 543, 277 N.E.2d 100 (1971). See also Rhodes v. Commonwealth, supra (trial judge entitled to disbelieve prisoner's uncorroborated and unsubstantiated statement that he notified prison officials of his request for a speedy trial under the agreement). *Page 930 
While the filing of a request with the proper custodial authorities is sufficient to fulfill the prisoner's responsibility under the agreement, the defendant has the burden of proving that such a proper request was filed. The judge could infer from the fact that no notice had been received in Massachusetts that no notice was ever given, especially where the California authorities had otherwise complied with the detainer statute. Because the judge was not required to find that the defendant complied with the agreement's requirements, we find no error in his denial of the defendant's first motion to dismiss."
398 Mass. at 677-79, 500 N.E.2d at 284-285. See also Annot., 98 A.L.R.3d 160 (1980); Kimberly v. State, 501 So.2d 534, 538
(Ala.Cr.App. 1986) ("The failure of prison officials to carry out their statutory duties under the Interstate Agreement on Detainers should not always be weighed against the prosecuting attorney.").
In McCallum v. State, 407 So.2d 865, 869 (Ala.Cr.App. 1981), this Court observed:
 "It is clear from [III](b) that a prisoner need only give or send a written request for final disposition of an outstanding detainer 'to the warden, commissioner of corrections or other official having custody of him' in order to completely fulfill his sole requirement under the agreement. People v. Daily, 46 Ill. App.3d 195, 4 Ill.Dec. 756, 360 N.E.2d 1131 (1977). This was the only provision with which the prisoner had to comply in order to initiate the statutory machinery. A prisoner seeking to benefit from the statutory provisions must first meet the burden of compliance with the agreement. Williams v. State of Maryland, 445 F. Supp. 1216 (D.Md. 1978)."
In this case, the appellant did not send any form of written notice to the "warden, commissioner of corrections or other official having custody of him" as required by Article III(b) of § 15-9-81 until June 23, 1989. The appellant's "cop outs" to his case manager and one of his counselors, as well as his oral requests to his counselors do not constitute sufficient compliance with the requirements of the Uniform Mandatory Disposition of Detainers Act providing that "[t]he written notice and request for final disposition . . . shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him." To obtain the relief provided by the Uniform Mandatory Disposition of Detainers Act, "it is incumbent upon the [prisoner] . . . to comply with all the provisions of the act, including the preparation of his written request for disposition of detainer[s]. . . ." State v. Calderon, 233 Kan. 87,661 P.2d 781, 788 (1983). "[T]here must be strict compliance by the prisoner with the requirements of Article III, otherwise, a conniving prisoner could finagle procedures to frustrate efforts of the prosecution to give the prisoner the benefit of the Interstate Compact on Detainers." Whitley v. State,392 So.2d 1220, 1224 (Ala.Cr.App. 1980), cert. denied,392 So.2d 1225 (Ala. 1981).
On June 23, 1989, the appellant complained to the warden concerning the failure of the prison staff to send the detainer notices. He was tried 179 days later on December 19, 1989. "A determination of whether the prison officials complied with the Uniform Act requirements must be made on anad hoc basis, with full consideration of factors such as the length and reasons for the delay, the existence of prejudice to the defendant arising from the delay, the knowledge of the delay by prison officials, and their efforts to facilitate transmission of the request after the specific problems resulting in the delay were discovered." People v. Bean,650 P.2d 565, 568 (Colo. 1982), overruled on other grounds, Peoplev. Higinbotham, 712 P.2d 993 (Colo. 1986).
The appellant was actually tried 151 days after the proper "paperwork" was mailed to the district attorney. This was 132 days after the prosecutor actually received the request for speedy disposition. Based on the above, we hold that the appellant's motion to dismiss was properly denied.
 II.
Because the appellant was brought to trial within 180 days after he sent written *Page 931 
notice "to the warden," we need not address the issue of whether the trial court erred in denying the appellant's motion to dismiss on the independent ground that the appellant had failed to show prejudice when the State had failed to try him within 180 days.
 III.
The appellant argues that the trial court was required to grant his motion to dismiss because the State failed to bring him to trial within 90 days of receiving notice as required by Ala. Code 1975, § 15-9-84. That section provides:
 "Within 90 days after the receipt of the request and certificate by the court and district attorney or within such additional time as the court for good cause shown in open court may grant, the prisoner or his counsel being present, the indictment . . . shall be brought to trial; but the parties may stipulate for a continuance or a continuance may be granted on notice to the attorney of record and opportunity for him to be heard. If, after such a request, the indictment . . . is not brought to trial within that period, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment . . . be of any further force or effect, and the court shall dismiss it with prejudice."
Section 15-9-80 declares that §§ 15-9-80 through -88 "may be cited as the Uniform Mandatory Disposition of Detainers Act." The purpose of that act is stated in its title:
 "To provide that Alabama enter into the Interstate Agreement on Detainers Act, with other member-states, which promotes cooperation between the several states to secure a speedy trial of persons already incarcerated in other jurisdictions by the expeditious and orderly disposition of all detainers based on untried indictments, information or complaints; and to further provide for the uniform mandatory disposition of detainers so as to prescribe the manner and procedures for release of detainers available to incarcerated persons against whom there is pending untried indictments, information or complaints."
1978 Ala. Acts 693, No. 590 (April 27, 1978).
Alabama's Uniform Mandatory Disposition of Detainers Act (§§ 15-9-80 through -88) provides for both the interstate andintrastate disposition of detainers. Section 15-9-81 adopts and set out the text of the Interstate Agreement on Detainers Act, see 18 U.S.C.S. App. at 118 (Law.Co-op. 1990), which "prescribes procedures by which a prisoner may demand the prompt disposition of charges pending against him in a state other than the one in which he is imprisoned." Annot., 98 A.L.R.3d at 166. However, §§ 15-9-82 through -88 set forth the major provisions of the Uniform Mandatory Disposition of DetainersAct, see 11 U.L.A. 328 (Supp. 1990 at 207), which provides for the intrastate transfer of a prisoner. Annot., 98 A.L.R.3d at 166, n. 1. The first sentence of § 15-9-82(a) provides: "Any person who is imprisoned in a penal or correctional institutionof this state may request final disposition of any untried indictment, information or complaint pending against him inthis state." (Emphasis added.) "In arriving at a determination of the legislature's intent, a statute should be examined as a whole and, if possible, every section should be given effect." McCausland v. Tide-Mayflower Moving Storage,499 So.2d 1378, 1382 (Ala. 1986)
Therefore, § 15-9-84, concerning the 90-day limit on intrastate pending charges, did not apply to the appellant, who was incarcerated in a state outside Alabama.
This holding is contrary to prior opinions of this Court. In McAlpin v. State, 397 So.2d 209 (Ala.Cr.App.), cert. denied,397 So.2d 211 (Ala. 1981), this Court first held that the statutory codification of the Alabama Uniform Mandatory Disposition of Detainers Act, "as its name implies and its contents show, relates exclusively to problems pertaining to interstate extradition." See also Randle v. State,554 So.2d 1124, 1126-1127 (Ala.Cr.App. 1986), affirmed on other grounds,554 So.2d 1131 (Ala. 1987); Steele v. State, 542 So.2d 1309,1311 (Ala.Cr.App. 1988); Mathis v. State, *Page 932 501 So.2d 509, 512 (Ala.Cr.App. 1986); Burke v. State, 478 So.2d 6, 7
(Ala.Cr.App. 1985); Terry v. State, 461 So.2d 24, 25-26
(Ala.Cr.App.), cert. denied, 461 So.2d 24 (Ala. 1984); Lowery v.State, 452 So.2d 897, 898 (Ala.Cr.App. 1984); Tyree v. State,439 So.2d 1346, 1348 (Ala.Cr.App. 1983); Morning v. State,416 So.2d 780, 781 (Ala.Cr.App. 1982). Those cases are specifically overruled the extent that they conflict with our present holding.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.