619 So.2d 1267 (1992)
Ex parte Billy Don SPRINGER.
(Re STATE of Alabama v. Billy Don SPRINGER.)
1910874.
Supreme Court of Alabama.
December 11, 1992.
Rehearing Denied May 7, 1993.
Billy Don Springer, pro se.
James H. Evans, Atty. Gen., and Yvonne A. H. Saxon, Asst. Atty. Gen., for respondent.
KENNEDY, Justice.
Billy Don Springer seeks a mandamus ordering the Circuit Court of Morgan County to dismiss certain pending criminal charges on the basis of a lack of jurisdiction.
The issue is whether the Uniform Mandatory Disposition of Detainers Act (§§ 15-9-80 through -88) addresses two different subject matters and thereby violates Art. IV, § 45, Ala. Const.1901.
Springer is currently serving a 10-year prison sentence in Alabama. On September 3, 1991, while Springer was in prison, he was charged in this state with robbery in the first degree, burglary in the first degree, burglary in the third degree, theft of property in the second degree, and two counts of receiving stolen property in the first degree. The record does not indicate whether Springer had escaped or was on parole when he allegedly committed those crimes. Based on the charges, detainers were lodged against Springer.
Springer moved for a trial to be held in 90 days. In his motion, Springer argued that the Uniform Mandatory Disposition of *1268 Detainers Act applied to intrastate prisoners and that he was entitled to a trial in 90 days under § 15-9-84. The motion was granted on October 2, 1991.
Because the trial was not held within 90 days, Springer petitioned the Court of Criminal Appeals for a writ of mandamus, contending that the charges should be dismissed for lack of jurisdiction, relying on § 15-9-84. The Court of Criminal Appeals denied the writ. Springer then petitioned this Court for a writ of mandamus.
A writ of mandamus is a drastic and extraordinary writ and will not be issued unless the petitioner has a clear and undisputable right to a particular result. Ex parte Sides, 594 So.2d 93 (Ala.1992).
Springer argues in his petition that according to Turner v. State, 584 So.2d 925 (Ala.Cr.App.1991), the Uniform Mandatory Disposition of Detainers Act applies not only to inter state prisoners but also to intra state prisoners. Springer argues that under § 15-9-84 he was entitled to a trial within 90 days after he filed his request for trial and that, because the trial was not held within 90 days, the charges must be dismissed for lack of jurisdiction.
In Turner, the Court of Criminal Appeals held:
"Alabama's Uniform Mandatory Disposition of Detainers Act (§§ 15-9-80 through -88) provides for both the interstate and intrastate disposition of detainers. Section 15-9-81 adopts and [sets] out the test of the Interstate Agreement on Detainers Act, see 18 U.S.C.S.App. at 118 (Law.Co-op.1990), which `prescribes procedures by which a prisoner may demand the prompt disposition of charges pending against him in a state other than the one in which he is imprisoned.' Annot., 98 A.L.R.3d at 166 [n. 1]. However, §§ 15-9-82 through -88 set forth the major provisions of the Uniform Mandatory Disposition of Detainers Act, see 11 U.L.A. 328 (Supp. 1990 at 207), which provides for the intrastate transfer of a prisoner. Annot., 98 A.L.R.3d at 166, n. 1."
584 So.2d at 931.
Prior to Turner in 1991, the Uniform Mandatory Disposition of Detainers Act was held to apply only to interstate prisoners. Steele v. State, 542 So.2d 1309 (Ala. Cr.App.1988); Randle v. State, 554 So.2d 1124 (Ala.Cr.App.1986), aff'd on other grounds, 554 So.2d 1131 (Ala.1987); Mathis v. State, 501 So.2d 509 (Ala.Cr.App.1986); Burke v. State, 478 So.2d 6 (Ala.Cr.App. 1985); Terry v. State, 461 So.2d 24 (Ala.Cr. App.1984), cert. denied, 461 So.2d 24 (Ala. 1984); Lowery v. State, 452 So.2d 897 (Ala. Cr.App.1984); Tyree v. State, 439 So.2d 1346 (Ala.Cr.App.1983); Morning v. State, 416 So.2d 780 (Ala.Cr.App.1982); McAlpin v. State, 397 So.2d 209 (Ala.Cr.App.), cert. denied, 397 So.2d 211 (Ala.1981).
Article IV, § 45, Ala. Const.1901, provides the following:
"The style of laws of this state shall be: `Be it enacted by the legislature of Alabama,' which need not be repeated, but the act shall be divided into sections for convenience, according to substance, and the sections designated merely by figures. Each law shall contain but one subject, which shall be clearly expressed in its title, except general appropriations bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred, shall be re-enacted and published at length."
(Emphasis added.)
It is clear under § 45 that only one subject may be addressed in each law. Section 45 is supposed to prevent "hodge-podge" legislation under which "ill considered provisions pass into law while the thought of the legislature is directed to another subject." Boswell v. State, 290 Ala. 349, 276 So.2d 592 (1973), appeal dismissed, Boswell v. Alabama, 414 U.S. 1118, 94 S.Ct. 855, 38 L.Ed.2d 747 (1974); Wallace State Community College v. Alabama *1269 Comm'n on Higher Educ., 527 So.2d 1310 (Ala.Civ.App.1988).
It is abundantly clear from § 15-9-88 that the Legislature intended for the Uniform Mandatory Disposition of Detainers Act to pertain solely to the disposition of inter state detainers. Section 15-9-88 states that "this article shall be so construed as to effectuate its general purpose to make uniform the laws of this state with those states joining in the Interstate Agreement on Detainers Act." Also, the preamble to the Act specifically states that the purpose of the Uniform Mandatory Disposition of Detainers Act is to provide the procedures for transferring prisoners between the states signing the Interstate Agreement on Detainers. Act No. 590, Alabama Acts 1978.
Therefore, we declare void those sections of the Uniform Mandatory Disposition of Detainers Act dealing with intrastate prisoners.
The Act states that "the provisions of this Act are severable. If any part of the act is declared invalid or unconstitutional, such declaration shall not affect the part which remains." Act No. 590, § 9, Alabama Acts 1978. If a portion of a legislative enactment is determined to be unconstitutional but the remainder is found to be enforceable without it, the court may strike the offending portion and leave the remaining portion intact and in force, with or without a severability clause. City of Birmingham v. Smith, 507 So.2d 1312 (Ala. 1987). Specifically, §§ 15-9-82 through -84, as they concern intrastate prisoners, are severed from the Act. However, the remaining sections of the Act concerning the disposition of detainers lodged against inter state prisoners are valid and enforceable.
Every defendant is entitled to a speedy trial under the Sixth Amendment, and this Court is well aware of the particular importance of a "detainee's" right to a speedy trial. See, Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969) (constitutional guarantee of right to speedy trial is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation, and to limit possibilities that a long delay will impair the ability of the accused to defend himself). However, combining two different subjects, such as interstate and intrastate prisoners in the same law, violates § 45, Ala. Const.1901.
We note that Rule 8, A.R.Crim.P., protects an intrastate prisoner's Sixth Amendment right to a speedy trial. It provides:
"Insofar as is practicable, trials of criminal cases shall have priority over trials of civil cases. In determining the priority among criminal cases, the court shall consider, among others, the following factors:
"(1) The right of the defendant to a speedy trial under the constitutions of the United States and the State of Alabama;
"(2) Whether the defendant is in custody;
"(3) The relative gravity of the offense charged; and
"(4) The relative complexity of the case."
Based on the foregoing, we overrule that portion of Turner v. State applying the Uniform Mandatory Disposition of Detainers Act to intrastate prisoners.
The petition for the writ of mandamus is denied.
PETITION DENIED.
HORNSBY, C.J., and MADDOX, SHORES and ADAMS, JJ., concur.
STEAGALL and INGRAM, JJ., concur in the result.
INGRAM, Justice (concurring in the result only).
While I agree with the majority that the writ is due to be denied, I respectfully disagree with the majority's holding that Act No. 590, 1978 Ala.Acts 693, which has been codified as §§ 15-9-80 to -88, Ala. Code 1975, violates § 45, Ala. Const.1901. In my view, the majority fails to apply the correct standard of review to the question *1270 regarding the constitutionality of a state statute and fails to follow established law in determining the intent of the legislature in enacting the legislation at issue. Because I believe that Springer has failed to meet his burden of proving that he is entitled to the order of dismissal he seeks by mandamus, I believe that the majority unnecessarily examines the constitutional issue and then decides that issue contrary to the established law of our state.
This Court has stated before that it will not consider the constitutionality of legislation unless a constitutional question is presented and an answer to that question is essential to the disposition of the case. City of Mobile v. Gulf Development Co., 277 Ala. 431, 171 So.2d 247 (1965). I do not believe that a discussion of the constitutional issue was necessary to the disposition of this case. Assuming, however, that the constitutionality of the legislation is properly reviewable at this time, I nevertheless believe that the majority has failed to apply the proper guidelines for considering the constitutionality of a statute.
Since the earliest days of this State, this Court has followed certain guidelines for reviewing the validity of acts of the legislature. In State ex rel. Meyer v. Greene, 154 Ala. 249, 46 So. 268 (1908), those guidelines were set forth as follows:
"In entering upon a properly invited investigation of the constitutionality of legislative acts, this court has, as it should, borne constantly in mind: First, that the Constitution is a limitation, not a grant, of power; second, that its mandates are the supreme law to the legislative, executive, and judicial departments of this government; third, that the propriety and wisdom of enactments by the lawmakers are questions peculiarly and exclusively within the decisive right of that department, and, if the act under investigation contravenes no provision of the organic law, the judiciary is without rightful power to review the legislative determination of the wisdom and propriety of the action taken; and, fourth, that every enactment is presumptively constitutional and therefore valid, and he who assails it assumes the obligation to demonstrate beyond a reasonable doubt its violation of the fundamental law."
154 Ala. at 254, 46 So. at 270.
The standard of review to be applied when a court considers the constitutionality of a legislative act is as follows:
"`[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.'"
Home Indemnity Co. v. Anders, 459 So.2d 836, 840 (Ala.1984) (quoting Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944), cert. dismissed, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945)). Therefore, this Court should apply a liberal interpretation in favor of the constitutionality of the legislation challenged as violating the one-subject rule. 1A Norman J. Singer, Sutherland Stat. Const. § 17.01 (4th ed. Supp.1992) (citing State Board of Insurance v. National Employee Benefit Administrators, Inc., 786 S.W.2d 106 (Tex.App.1990)). The majority, however, does not apply a liberal interpretation to the statute and, indeed, it recites no standard under which it has assessed the validity of this legislation.
Second, the majority simply holds the statute unconstitutional because it appears to authorize more than one thing, i.e., inter state detainers (Interstate Agreement on Detainers or "IAD") and intra state detainers (Uniform Mandatory Disposition of Detainers Act or "UMDDA"). However, prior caselaw clearly holds that a statute does not violate the one-subject rule of § 45 as long as the provisions of the legislation are "germane to, cognate with, or complementary to" the same general subject that is the essence of the legislation. Opinion of the Justices, No. 307, 449 So.2d 237, 238 (1984).

*1271 "`The "subject" to be contained in a bill under section [45] of the Constitution, which provides that "[Each law] shall contain [but] one subject, which shall be clearly expressed in its title," may be as broad and comprehensive as the legislature may choose to make it. It may include innumerable minor subjects, provided all these minor subjects are capable of being so combined as to form only one grand and comprehensive subject; and if the title of the bill, containing this grand and comprehensive subject, is also comprehensive enough to include all these minor subjects as one subject, the bill and all parts thereof will be valid.'"
Boswell v. State, 290 Ala. 349, 353-54, 276 So.2d 592, 596 (1973) (quoting Ballentyne v. Wickersham, 75 Ala. 533, 536 (1883)), appeal dismissed, 414 U.S. 1118, 94 S.Ct. 855, 38 L.Ed.2d 747 (1974).
The majority states, "It is abundantly clear from § 15-9-88 that the Legislature intended for the Uniform Mandatory Disposition of Detainers Act to pertain solely to the disposition of inter state detainers." I respectfully disagree. The plain, clear, unequivocal language in the preamble to Act No. 590 states the purpose of the Act as follows:
"To provide that Alabama enter into the Interstate Agreement on Detainers Act, with other member-states, which promotes cooperation between the several states to secure a speedy trial of persons already incarcerated in other jurisdictions by the expeditious and orderly disposition of all detainers based on untried indictments, information or complaints; and to further provide for the uniform mandatory disposition of detainers so as to prescribe the manner and procedures for release of detainers available to incarcerated persons against whom there is pending untried indictments, information or complaints."
The Alabama legislature included specific reference to the UMDDA, which is generally recognized as applying to intra state detainers, and the IAD, which is applicable to inter state detainers. If the legislature had "intended" to enact only one form of detainer relief, i.e., relief as to inter state detainers only, the legislature could have so specified.
A "detainer" is the notification by a prosecutor to the institution where an inmate is currently serving a sentence that the inmate is "wanted to face pending criminal charges." Leslie W. Abramson, Criminal Detainer 94 (1979) (quoting United States v. Evans, 423 F.Supp. 528, 531 (S.D.N.Y. 1976)). After the inmate is informed of the detainer, he can request the speedy disposition of the pending trial under the provisions of either the IAD, if the charge is pending in a jurisdiction other than the one in which the inmate is incarcerated, or under the provisions of the UMDDA, if the charge is pending in the jurisdiction.
Section 1(a) of the UMDDA states: "Any person who is imprisoned in a penal or correctional institution of this state may request final disposition of any untried [indictment, information, or complaint] pending against him in this state." Uniform Mandatory Disposition of Detainers Act, § 1(a), 11 U.L.A. 321, 328 (1974). The purpose of the UMDDA has been said to be
"to carry into effect the constitutional guarantee of a speedy trial and to more precisely define what is meant by a `speedy trial' ...; to prevent those charged with enforcement of criminal statutes from holding over the head of a prisoner undisposed of charges; [and] to provide for the trial of charges against an accused while witnesses are available and their memories fresh."
Abramson, supra, at 116-17 (quoting State v. Wilson, 22 Utah 2d 361, 363, 453 P.2d 158, 159 (1969)).
The IAD, on the other hand, "provides the inmate with a method of resolving the charges underlying detainers from another jurisdiction, but also provides prosecutors with a method for securing inmates incarcerated in other jurisdictions for trial before the expiration of their sentences." Id. at 93. The statement of the purpose of the IAD was drafted in response to problems that had been encountered between states with different procedures regarding the return of inmates for trial or for revocation *1272 of parol proceedings in another state. The IAD is a contract between the joining states concerning the procedures that are to be followed when an inmate serving a sentence in one jurisdiction has an outstanding charge in another jurisdiction. See Interstate Agreement on Detainers, 11 U.L.A. 322-27 (1974).
The legislative intent, as shown by the clear and unequivocal language of the Act, was to legislate a method of dealing with detainers. The fact that the Act and now Chapter 9, Title 15, of the Alabama Code mandate one proceeding when the inmate has a pending charge in a jurisdiction other than the one in which he is currently serving a term of imprisonment, and a different proceeding when the pending charge is in the same jurisdiction, does not violate § 45. The IAD and the UMDDA are definitely "germane to, cognate with, and complementary to" the general subject of detainers. The IAD and UMDDA "embody identical policies and principles". People v. Lewis, 680 P.2d 226, 229 n. 8 (Colo.1984), overruled on other grounds, People v. Higginbotham, 712 P.2d 993 (Colo.1986). They "are parallel acts designed to secure a speedy trial to the person incarcerated in a penal institution either in this or another state." Sweat v. Darr, 235 Kan. 570, 574, 684 P.2d 347, 352 (1984). Therefore, I must disagree with the majority because I believe that Act No. 590, codified as § 15-9-80 to -88, Ala.Code 1975, including the IAD and the UMDDA, does not violate § 45, Ala. Const.1901.
Turning to the merits of the petition for the writ of mandamus, I agree that the writ should be denied. As the majority points out, the petitioner has a heavy burden of proof, because mandamus is a drastic and extraordinary writ that will not be issued unless the petitioner has shown he has a clear and undisputable right to the order sought. See Ex parte Martin, 598 So.2d 1381 (Ala.1992). The material presented to this Court, in my opinion, fails to meet this heavy burden.
Assuming that the UMDDA applies to intrastate prisoners, such as Springer, the trial court, upon granting Springer's motion for speedy trial, was required to bring Springer to trial within 90 days. See § 15-9-84, Ala.Code 1975. Springer alleges that he was not brought to trial within that time, and the material presented to the Court confirms this allegation. However, it appears that during the 90-day period, Springer's trial was scheduled; the trial court, in its response to the petition for writ of mandamus, states that Springer was not tried at that time because of a crowded docket. Indeed, the trial court has submitted the transcript of a proceeding held in open court on the date Springer's case was set for trial, at which time the trial court stated, in the presence of Springer's attorney, that Springer's trial would be continued because of the trial court's crowded docket.
Section 15-9-84 states that a "continuance may be granted on notice to the attorney of record and opportunity for him to be heard." From all that appears to me, I believe that Springer has failed to show that his trial was not properly continued. Therefore, I believe that the writ should be denied.
For the reasons stated above, I am compelled to disagree with the majority's holding that §§ 15-9-80 to -88 violate § 45, Ala. Const.1901; however, I agree that the writ of mandamus is due to be denied, because I find that Springer has failed to show this Court his entitlement to that remedy.
STEAGALL, J., concurs.