588 So.2d 509 (1991)
Marvin GOODSON
v.
STATE.
CR 89-1291.
Court of Criminal Appeals of Alabama.
March 1, 1991.
Rehearing Denied April 26, 1991.
Certiorari Quashed October 18, 1991.
*510 Joseph J. Gallo, Dothan, for appellant.
Don Siegelman, Atty. Gen., and Norbert H. Williams, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 1901212.
TAYLOR, Judge.
Appellant Marvin Goodson was convicted of the unlawful distribution of a controlled substance, cocaine, a violation of § 13A-12-211, Code of Alabama 1975. He was sentenced to 15 years in prison.
The state's evidence tended to show that in late June 1988, the Dothan Police Department and an Alabama Alcoholic Beverage Control Board agent, Robert Chambers, were conducting an investigation into drug activity in the Dothan area. Chambers first saw an individual, whom he identified at trial as Goodson, in the front yard of a residence on Toad Street in Dothan. Chambers, who was accompanied by an unidentified confidential informant, stopped at the front yard of the residence. Goodson, who was talking to two other individuals, started walking toward Chambers's vehicle. Chambers asked Goodson for a "$40.00 piece of rock cocaine." Goodson said that he had the cocaine and asked Chambers to pull into the parking area. They went to the porch and Goodson pulled from his pocket a bottle that contained several pieces of white "rock substance." He told Chambers to take his pick of the pieces. They then concluded the transaction and Chambers bagged the substance so that it could be analyzed.
During the course of the transaction, Chambers was wearing a "body mike." At the time of the transaction, Chambers did not know the name of the individual who sold him the cocaine. After Chambers returned to his vehicle, he called Sheriff Hadden, who was monitoring the transaction through the body mike which Chambers was wearing, and gave him a description of the suspect. He told Hadden that the individual was a black man, wearing blue jeans, a red pullover shirt, and a black hat, and that he had a black and gray beard. Chambers knew the other two individuals who were with Goodson at the time Chambers approached the residence. Sheriff Hadden went to the residence and identified the individual as Marvin Goodson, the appellant. Chambers stated at trial that he saw the appellant again later that same night on Toad Street. In fact, the appellant again sold Chambers cocaine. (A conviction on that sale has recently been affirmed without opinion by this court. See Goodson v. State, 579 So.2d 709 (Ala.Cr. App.1991)). The appellant, as a result of the ongoing investigation in Dothan, had no warrant sworn out for his arrest until three months after the transaction. On appeal, he raises three issues.

I
Initially, the appellant contends that he was denied his constitutional right to a speedy trial. He was incarcerated on an unrelated offense when the warrant in this case was sworn out for his arrest on September 22, 1988. He was indicted for this offense on April 28, 1989. In the interim, he filed, pro se, several motions, such as a motion for speedy trial and a motion to dismiss for failure to prosecute. The right to a speedy trial is "triggered when a criminal prosecution has begun and extends only to those persons who have been `accused' in the course of that prosecution. United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971)." Hayes v. State, 487 So.2d 987, 991 (Ala.Cr. App.1986). This right has been said to be activated when a warrant of arrest is issued, "because this is when the prosecution is commenced under § 15-3-7, Code of Alabama *511 1975." Steeley v. City of Gadsden, 533 So.2d 671, 678 (Ala.Cr.App.1988).
The date the prosecution was commenced in this case was September 22, 1988, the date of the original warrant of arrest. We must determine if the time between the commencement of prosecution and the date of trial, August 16, 1989, was so great that the appellant's Sixth Amendment right to a speedy trial was violated.
The United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), recognized four factors which should be analyzed when determining whether an individual's speedy trial right has been violated. They are "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Barker, 407 U.S. at 530, 92 S.Ct. at 2192.
Regarding the first criterion, the Supreme Court stated:
"We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate.... `The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.'"
Barker, 407 U.S. at 521-22, 92 S.Ct. at 2187-88.
This court noted in Arnett v. State, 551 So.2d 1158 (Ala.Cr.App.1989), that the length of the delay must be "presumptively prejudicial." In Arnett, we stated that 20 months was not too long a delay. However, as the Supreme Court noted in Barker and as this court noted in Arnett, these cases must be analyzed on a case-by-case method, since each involves circumstances which are unique to that particular case. A balancing test is used in which the "conduct of both the prosecution and the defendant are weighed." Barker, 407 U.S. at 530, 92 S.Ct. at 2192. We must look at the reasons for the delay. In the instant case the length between the issuance of the warrant and the trial date was 11 months. As the prosecution stated at the hearing on the motion to dismiss, the appellant had several charges pending against him. The time between the date of the issuance of the warrant issuance and the date of trial was spent in clearing up the other pending charges. He was tried in January for one offense and in July of the same year for another offense. "`The period of delay attributable to disposition of the other charge in the other county, where reasonable, cannot be charged against the state as needless delay.'" Kimberly v. State, 501 So.2d 534, 536 (Ala. Cr.App.1986).
Although the length of the delay has been said to trigger the examination of the remaining factors, most courts do not analyze a speedy trial argument without taking into account all four factors discussed in Barker. The Supreme Court stated in Barker, "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." Barker, 407 U.S. at 533, 92 S.Ct. at 2193.
We have thus far taken into account the length of the delay and the reasons for the delay, and in regard to those two factors have found nothing to indicate a denial of the right to a speedy trial. We note that the third factor must be weighed in Goodson's favor; he himself filed several motions alleging that his right to a speedy trial was violated. Thus, he had asserted his right.
In regard to the fourth factor of the Barker analysis, we find that the appellant suffered no prejudice as a result of the delay. To show that an appellant has been prejudiced by the pre-trial delay, we must look at any oppressive pre-trial incarceration, any anxiety and concern suffered by the appellant, and any impairment of appellant's defense by reason of the delay. See Barker. The appellant had 13 years left to serve on an unrelated charge when this case came to trial. As in Broadnax v. State, 455 So.2d 205, 207 (Ala.Cr.App.1984), we cannot say that the delay caused prejudice to the appellant, since he was in prison and his freedom was already curtailed as a *512 result of the conviction on the prior offense. Furthermore, he has failed to show that the delay caused any "anxiety and concern." Also, the appellant made several allegations that the delay impaired his defense, but he failed to substantiate the claims by evidence at the hearing on the motion.
The appellant contends that he was prejudiced by the court's delay in providing him with appointed counsel. The appellant argues that he was prejudiced because when he was appointed an attorney on June 7, 1989, his attorney did not have adequate opportunity to prepare for the trial in August, since no preliminary hearing was held. The record is quite confusing as to the motions which the appellant filed, for it appears that he filed many. From our review of the record we find no reference to any motion requesting counsel having been filed prior to the motion filed on August 16, 1989, which requested that counsel be appointed to represent the appellant. The record further shows that his counsel was appointed on June 7, 1989, prior to the filing of the August motion. The record reflects that on October 21, 1988, the appellant filed a motion to dismiss for failure to give him a speedy trial. This motion was filed prior to the appellant's indictment. The record shows that the appellant was indicted by the April 1989 term of the Houston County grand jury. On May 19, 1989, the appellant filed a motion to dismiss for failure to prosecute because, he argued, he was not granted a speedy trial. This argument was brought to the attention of the trial court in a pretrial motion. The court stated:
"The Court: Let the record show that he again filed for a motion to dismiss on May 19, 1989, alleging his right to a speedy trial and that the indictment should be dismissed for lack of a speedy trial and that he be givenhe be brought back to Houston County for a hearing.
"Okay. Whereupon, the Circuit Court of Houston County dismissednot dismissed denied his motion to dismiss on June 19, 1989, and he was arraigned on or a waiver of arraignment was filed on July 6, 1989, by his court appointed attorney, Mr. James A. Ward.
"....
"Mr. Ward: (Defense Counsel). Could the Court address the issue of the fact that he has not been appointed an attorney for a year while charges were pending against him and lost his right to a preliminary hearing and right to have effective assistance of counsel up until the date that I was appointed on the 7th?
"The Court: But the record shows you were appointed June 7th, and this is August, so the Court will deny the motion to dismiss on those grounds."
The trial court's decision in this matter is supported by the record. The record shows that no motion was made to appoint counsel prior to the appellant's having obtained counsel. In fact the record shows that the appellant was represented by counsel at the time he filed his pro se "motion for speedy trial and/or final disposition," which was filed in October 1988. The appellant does make reference, in a motion he filed on August 16, 1989, to an earlier motion he claims he filed requesting effective assistance of counsel, but this reference is not supported by the record. The so-called request for assistance of counsel is found in a paragraph with the heading "Conclusion and Relief" as part of a pro se motion filed May 19, 1989, as follows:
"Wherefore, movant respectfully request this court to dismiss the above cause actions and/or this motion be set for hearing as expeditiously as possible at the convenience of the court, that movant be returned to the Houston County Jail by order of this court for the hearing and sufficient time be allowed to consult with his attorney if counsel is appointed prior to said hearing, and all other just and proper relief as this court deem just and proper."
The trial court denied this motion, stating that the "Defendant (should) be placed on the earliest practicable trial docket." His counsel was appointed on June 7, 1989 and a "waiver of arraignment" form was filed on July 6, 1989. We believe that the confusion in this case resulted from the *513 fact that the appellant had several charges pending against him at the same time. If any items were missing from the record or were incorrect, it is the appellant's duty to make a complete record on appeal. See Montgomery v. State, 504 So.2d 370 (Ala. Cr.App.1987). We cannot predicate error on a silent record. See Ex parte Robinson, 444 So.2d 884 (Ala.1983).
As the United States Court of Appeals stated in United States v. Sahley, 526 F.2d 913 (5th Cir.1976):
"Although in some instances the courts have determined the time period to be so short between the time of appointment of counsel and trial that the defendant was denied his Sixth Amendment right to counsel and due process rights, there is no constitutionally proscribed time period."

Sahley, 526 F.2d at 918. As the State points out in its brief, Alabama statutes provide that counsel be appointed prior to arraignment if it is shown that the defendant does not have counsel and is indigent. See § 15-12-20, Code of Alabama 1975. The right to counsel attaches upon a formal initiation of adversary judicial proceedings. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The record shows that the appellant was appointed counsel several months prior to his scheduled arraignment. From the facts of this particular case, we cannot say that any error occurred here.
The appellant argues that he was prejudiced by the fact that he had no preliminary hearing. We do not agree.
"The purpose of a preliminary hearing is to determine probable cause. The indictment satisfies this requirement. A repetitious inquiry to determine probable cause after indictment is not necessary." (citations omitted).
Elmore v. State, 445 So.2d 943, 945 (Ala. Cr.App.1983).
As this court stated in Copeland v. State, 455 So.2d 951 (Ala.Cr.App.1984), cert. denied, 455 So.2d 956 (Ala.1984), "`Once an accused has been indicted, no grounds for reversible error exist when the accused's demand for a preliminary hearing is not satisfied.'" Copeland, 455 So.2d at 956, quoting Duncan v. State, 369 So.2d 885 (Ala.Cr.App.1979). The record shows that the appellant has failed to show any prejudice by the fact that his counsel was appointed approximately two months prior to trial and the fact that he had no preliminary hearing.
The appellant further argues, in regard to his claim that he was denied a speedy trial, that the trial court erred in not applying § 15-9-80, Code of Alabama 1975, to him. (The appellant was a Bullock County, Alabama, inmate who had several untried indictments in Houston County, Alabama.) Section 15-9-80 is the Uniform Mandatory Disposition of Detainers Act. (Approximately 46 states have similar acts. The Alabama Mandatory Disposition of Detainers Act adopts the Federal Interstate Agreement or Detainers Act or the IADA.) See United States v. Mauro, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978)). The Federal Interstate Agreement or Detainers Act is:
"intended to minimize uncertainties resulting from outstanding charges against prisoners, detainers based on such charges, and difficulties in securing speedy trial of prisoners who are incarcerated in other jurisdictions, all of which produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. The purpose of the Agreement is to encourage the expeditious and orderly disposition of charges that are outstanding against prisoners who are incarcerated in other states, as well as the expeditious and orderly determination of the proper status of detainers based on untried indictments, informations, or complaints."
Annot., 98 A.L.R.3d 160, 167 (1980).
This court on several occasions has stated that the Alabama Uniform Mandatory Disposition of Detainers Act does not apply to intrastate detainers but only to interstate detainers. See Kimberly v. State, 501 So.2d 534 (Ala.Cr.App.1986); Terry v. State, 461 So.2d 24 (Ala.Cr.App. 1984). (North Carolina has held similarly. See State v. Dammons, 293 N.C. 263, 237 *514 S.E.2d 834 (1977)). Although we hold that this Act does not apply to the appellant, he argues that the statute violates his guarantee of equal protection by its application only to interstate prisoners and not to intrastate prisoners. This issue has not been previously addressed by this court. The Supreme Court of South Carolina has stated: "Appellant's argument that the Act should be construed as applicable to intrastate detainer is largely one of policy, more properly directed to the legislature." State v. Monroe, 262 S.C. 346, 204 S.E.2d 433, 435 (1974). "Rights created by the IADA (Interstate Agreement on Detainer Act) are statutory, not fundamental, constitutional, or jurisdictional in nature." Greathouse v. United States, 655 F.2d 1032 (10th Cir.1981), cert. denied, 455 U.S. 926, 102 S.Ct. 1289, 71 L.Ed.2d 469 (1982) (citations omitted).
We would be reluctant to conclude that Alabama's Uniform Mandatory Disposition of Detainers Act violates principles of equal protection.
"At the outset, it must be noted that the equal protection clause of the Fourteenth Amendment does not prohibit all classifications, but only those which are arbitrary and unreasonable. Minnesota, in formulating its extradition laws, has developed different procedures for prisoners and for its ordinary citizens.
"We cannot agree that such a classification is per se arbitrary and unreasonable."
Wertheimer v. State, 294 Minn. 293, 201 N.W.2d 383, 385 (1972). The Supreme Court of Minnesota was faced with deciding whether that state's Interstate Agreement on Detainer Act violated the principles of equal protection by not providing a prisoner with a hearing prior to being sent to another jurisdiction as did its Uniform Criminal Extradition Act.)
"The Equal Protection Clause of the Fourteenth Amendment goes no further than to prohibit invidious discrimination.... If there is some reasonable basis for the recognition of separate classes, and if the disparate treatment of the classes has a rational relation to the object sought to be achieved by the lawmakers, the Constitution is not offended. The transgression arises only when the classification rests upon grounds wholly irrelevant to achievement of the State's objective; the separate treatment must admit of but one conclusion beyond a rational doubt, i.e., that the basis therefore is arbitrary and unreasonable and without relevance to the legislative goal."
State v. Thompson, 133 N.J.Super. 180, 336 A.2d 11, 14 (1975) (citations omitted).
The purpose of the IADA is to "`minimize the adverse impact of a foreign prosecution on rehabilitative programs of the confining jurisdiction.' United States v. Milhollan, 599 F.2d 518, 528 (3d Cir.1979), cert. denied, 444 U.S. 909, 100 S.Ct. 221, 62 L.Ed.2d 144 (1979), quoting, United States ex rel. Esola v. Groomes, 520 F.2d 830, 836-37 (3d Cir.1975)." United States v. Reed, 620 F.2d 709, 711 (9th Cir.1980); see also Annot. 98 A.L.R.3d 160 (1980), cert. denied, 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980). It was further designed to provide cooperation between member states having similar acts. See Annot., 98 A.L.R.3d 160 (1980). There is a rational basis to distinguish between instate prisoners and those in other jurisdictions. The statute makes no restrictions on the basis of race, religion, or any other arbitrary classification. The purpose was to provide for quicker rehabilitation efforts when the person is facing a charge in another state and to promote cooperation between the member states. We cannot say that this violates principles of equal protection.

II
The appellant next argues that there was insufficient evidence of his identification to warrant a conviction. He states that the agent's identification of him was based on surmise and guesswork and was not sufficient to support the verdict. We do not agree. The appellant argues that Chambers did not know his name but described him to another officer and that he did not see the appellant until the day of *515 trial. This contention is not supported by the record. As stated earlier, the appellant was again seen by Chambers later that same night and at that time made another sale of cocaine to Chambers. Chambers had more than one opportunity to view the appellant.
In Tankersley v. State, 448 So.2d 486 (Ala.Cr.App.1984), a witness was allowed to testify regarding identification of the defendant even though he said he was identifying the appellant when he was only 90% sure that the defendant was the person who committed the crime. As we stated, "This does not prevent the identification from being a positive identification. It is rather a matter for the jury to consider on passing on the weight and sufficiency of the testimony. Gholston v. State, 338 So.2d 454 (Ala.Cr.App.1976)." Tankersley, 448 So.2d at 488. Whether the jury believed Chambers's identification was enough to convict the appellant was solely a question of fact. "`The credibility of this evidence was for the trial judge to determine. The truthfulness or falsity of the evidence presented is not for this court to decide.'" Tankersley, 448 So.2d at 488.
As this court stated in Jackson v. State, 414 So.2d 1014 (Ala.Cr.App.1982), "Reliability is the linchpin in determining the admissibility of identification testimony." Jackson, 414 So.2d at 1017. In order for the testimony to be reliable, it must meet the requirements established in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). We must look at the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. at 199, 93 S.Ct. at 382. When considering these factors in light of the facts stated above, we find it clear that Chambers's identification of the appellant was correctly received into evidence. We further note that during the direct examination of Chambers the appellant made no objection to Chambers's testimony concerning his identification of the appellant.

III
Last, the appellant contends that the trial court erred in not instructing the jury that "reasonable doubt may arise from the lack of evidence as well as from the evidence." After a review of the record, we consider it clear that this charge was given to the jury. The trial court stated in its oral charge:
"If you find from your consideration of all the evidence that the State has proven each of the necessary elements of the offense charged beyond a reasonable doubt and to a moral certainty, then you verdict should be that you find the defendant guilty of the offense of unlawful distribution of a controlled substance as charged in the indictment.
"If, on the other hand, from your consideration of the evidence or the lack of evidence, you are not convinced that the State has proven each of the essential elements of the offense of unlawful distribution of a controlled substance beyond a reasonable doubt and to a moral certainty, then you must find the defendant not guilty of the offense of unlawful distribution of a controlled substance as charged in the indictment."
It is clear from this excerpt from the trial court's instructions that the requested charge was given to the jury. No error occurs in the denial of a requested charge that is substantially covered in the court's oral instructions. See Lundy v. State, 539 So.2d 324 (Ala.Cr.App.1988).
For the foregoing reasons, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.