JAMES H. FAULKNER, Retired Justice.
In separate indictments, Robert Leslie Manning was charged with the offense of pharmacy robbery, in violation of § 13A-8-51, Code of Alabama 1975, and robbery in the first degree, in violation of § 13A-8-41, Code of Alabama 1975. The cases were consolidated for trial, and the jury found Manning guilty of pharmacy robbery and robbery in the first degree, as charged in the indictments. The court sentenced Manning to life imprisonment without the possibility of parole in both cases. Two issues are raised on appeal.
I
Manning contends that the trial court erred in denying his motion to suppress the evidence obtained from the search of the van in which Manning was riding because, he argues, the officers were not justified in stopping the.van.
To stop a person for questioning or investigatory detention does not require probable cause; the officer need only be able to articulate specific facts and inferences that lead to a reasonable suspicion of criminal activity. Terry v. State, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879-80, 20 L.Ed.2d 889 (1968).
*1264 The State of Alabama has codified the investigative stop at § 15-5-30, Code of Alabama 1975, which authorizes any law enforcement officer to “stop any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or other public offense....”
Applying these authorities to the case at bar, it is clear that when the officers stopped the van in which Manning was traveling, they had specific facts and inferences that led to a reasonable suspicion that Manning was engaged in criminal activity.
Officer David Williams Snodgrass of the Mobile Police Department testified that at approximately 7:42 on the evening of October 17, 1990, he and his partner, Officer Darrell Williams, received a radio dispatch stating that an armed robbery had just occurred at the Direct Oil gasoline service station at the corner of Michael and Azalea Boulevard and that the perpetrator was a white male, approximately 5'7" to 5'9" inches tall, with long brown hair, a mustache and possibly a beard, and wearing a red and blue pinstriped shirt.
According to Officer Snodgrass, he and his partner, who were in the immediate vicinity of the armed robbery, immediately drove their patrol car to the intersection of Interstate Highway 65 and Cottage Hill Road and positioned their car in the median facing west on Cottage Hill Road to enable them to see oncoming traffic. The officers then began shining a large spotlight known as a “Q-beam” at every car that was coming eastbound on Cottage Hill, and the officers noticed that as they shone the spotlight on the drivers of most cars, the drivers would squint and look like “who in the world is shining that bright light in my face.” Officer Snodgrass testified that, at that moment, a brown van driven by a white female passed their location and that when they shone the spotlight at the white male in the passenger side, the passenger did not squint and look at the officers like the other drivers but he instead stared straight ahead and then cut his eyes at the officers, as if he were “trying to look too casual.”
Officer Snodgrass further testified that before stopping the van, he noticed that the passenger fit the physical description of the robber — a white male with long brown hair and a mustache. Although the passenger was wearing a white tank top instead of the red and blue pinstriped shirt detailed in the radio dispatch, Officer Snod-grass knew, based upon his experience in apprehending robbery suspects, that it was common for robbery suspects to change clothing after a robbery. Officer Snod-grass further testified that the brown van was coming from the area of the robbery within minutes after the robbery report was made.
We conclude that the officers were justified in stopping the van in which Manning was traveling because the officers clearly had before them the following specific facts and inferences that led to a reasonable suspicion that Manning was engaged in criminal activity: Manning, who was coming from the area of the robbery within minutes after the robbery report was made, fit the general physical description of the perpetrator, and Manning’s unusual and surreptitious response to the spotlight furnished additional specific and articulable facts, which, when taken together with the rational inferences from those facts, could lead to a reasonable suspicion of criminal activity. Hence, the trial court properly denied Manning’s motion to suppress the evidence obtained from the search of the van on this ground.
II
Manning contends that the trial court erred in denying his motions for dismissal based upon the alleged violation of his right to a speedy trial.
The facts relevant to the disposition of this issue are listed below in chronological order.
October 17 and 18, 1990: Manning was arrested in Mobile, Alabama, for first degree robbery and pharmacy robbery, respectively. At the time of these arrests, Manning was on probation for a prior conviction for first degree robbery. Because of these arrests, Manning’s probation was revoked, and he was incarcerated at Kilby Correctional Facility.
*1265 January 25, 1991: Manning gave to Mrs. Betty Teague, Director of Central Records, Alabama Department of Corrections, a “Motion for a Speedy Trial” addressed to the Mobile Circuit Court.
January 30,1991: Manning’s “Motion for a Speedy Trial” was stamped “received” by the Central Records Office of the Alabama Department of Corrections.
February 8, 1991: Manning’s “Motion for a Speedy Trial” was filed with the Clerk of the Mobile Circuit Court.
March 11, 1991: Manning sent to the Mobile Circuit Court a pleading addressed to the Mobile District Attorney and styled “Defendant’s Notice and Request for Disposition of Indictment.”
March 14, 1991: Manning’s pleading styled “Defendant’s Notice and Request for Disposition of Indictment” was filed with the Clerk of the Mobile Circuit Court.
April, 1991: Manning filed a petition for writ of mandamus with this court.
April 18, 1991: Judge Kittrell of the Mobile Circuit Court granted Manning’s “Motion for a Speedy Trial” and ordered that Manning’s case be presented to the May session of the Mobile County grand jury-
May 17, 1991: Manning was indicted for robbery in the first degree and pharmacy robbery in Mobile County, Alabama.
May 27, 1991: Manning filed with the Mobile Circuit Court clerk a “Motion for a Copy of Grand Jury Minutes and/or to Dismiss Indictments” together with an “Affidavit in Support of Motion for a copy of the Grand Jury Minutes and/or Dismissal of Indictments.”
June 10, 1991: Manning filed with the Mobile Circuit Court clerk a letter addressed to Judge Kittrell, which requested that the court activate all pre-trial motions filed by Manning.
June 21,1991: At his arraignment before Mobile Circuit Court Judge McRae, Manning pleaded not guilty to both charges of first degree robbery and pharmacy robbery; counsel was appointed to represent Manning, and a trial date of October 9, 1991 was set.
September 13, 1991: Manning’s motion for a copy of the grand jury minutes and/or to dismiss the indictments was denied.
September 18, 1991: Manning filed with the Mobile Circuit Court clerk a motion to dismiss the indictments pursuant to the Sixth and Fourteenth Amendments of the United States Constitution and §§ 15-9-82 to 15-9-84, Code of Alabama 1975.
September 27, 1991: The court continued Manning’s motion to dismiss the indictments until October 4, 1991, at 10:30 a.m.
October 4, 1991: Because Manning was incarcerated in the penitentiary, the court reset Manning’s motion to dismiss the indictments to the trial date of October 9, 1991.
October 8, 1991: Manning filed with the Mobile Circuit Court clerk an objection to the court’s continuance of his motion to dismiss the indictments.
October 9, 1991: At the request of Man- ■ ning and defense counsel, Manning’s trial was continued to be reset no later than December 25, 1991.
December 2, 1991: Manning filed with the Mobile Circuit clerk a letter of request addressed to Judge McRae and another motion for dismissal of indictments.
December 11, 1991: ' Because defense counsel was in another trial, Manning’s trial was continued until December 12, 1991.
December 12, 1991: Manning’s motion to consolidate his two cases for trial was granted over the State’s objection. Manning’s trial was continued, however, until January 16, 1992, at the request of the State because an eyewitness had just delivered a baby and was unavailable for trial.
December 30, 1991: Manning filed with the Mobile Circuit clerk a motion to proceed pro se.
January 13, 1992: Manning filed with the Mobile Circuit clerk a letter of request addressed to Judge McRae.
January 16, 1992: The court granted Manning’s motion to proceed pro se but ordered defense counsel to assist Manning at his consolidated trial. At the beginning of his trial, Manning filed another motion to dismiss the indictments *1266 in open court, and that motion was denied. The jury convicted Manning of first degree robbery and pharmacy robbery.
February 12 1992: At Manning’s sentencing hearing, defense counsel noted that Manning would raise the speedy trial issue on appeal. Manning was then sentenced to life imprisonment without parole in both cases.
A
Manning argues that Mobile County lost jurisdiction to try him when it failed to comply with the 90-day rule of § 15-9-84 of the Uniform Mandatory Disposition of Detainers Act. Section 15-9-80 through § 15-9-88, Code of Alabama 1975. Manning’s request to the state prison officials in January 1991 for a trial at the earliest possible date did not trigger the running of the 90-day period because, at that time, there was no “untried indictment, information or complaint pending against him in this state.” Section 15-9-82(a), Code of Alabama 1975. See Kimberly v. State, 501 So.2d 534, 539 (Ala.Cr.App.1986), cert. denied, 501 So.2d 534 (Ala.1987) (construing the 180-day period of § 15-9-81).
In order to invoke the provisions of § 15-9-84, it is essential that the accused must be imprisoned in this state and must have pending against him an untried indictment, information, or complaint in this state. See Turner v. State, 584 So.2d 925, 931 (Ala.Cr.App.), cert. denied, 584 So.2d 925 (Ala.1991) (§§ 15-9-82 through -88 provide for the intrastate transfer of a prisoner).
Manning’s post-indictment requests for a speedy trial or dismissal of the indictments likewise did not trigger the running of the 90-day period because in those requests Manning did' not comply with the notice requirements of § 15-9-83, Code of Alabama 1975.
Section 15-9-83, provides:
“The request shall be delivered to the warden or other like official having custody of the prisoner, who shall forthwith:
“(1) Certify the term of commitment under which the prisoner is being held, the time already served on.the sentence, the time remaining to be served, the good time earned, the time of parole eligibility of the prisoner and any decisions of the state board of pardons and paroles relating to the prisoner; and
“(2) Send by registered or certified mail, return receipt requested, one copy of the request and certificate to the court and one copy to the district attorney to whom it is addressed.”
Manning, who sent his uncertified requests directly'to the Mobile Circuit Court clerk, bypassed the simple procedure provided in § 15-9-83, and his uncertified pleadings were insufficient to trigger the state’s obligations under § 15-9-84. See St. John v. State, 473 So.2d 658 (Ala.Cr.App.1985) (construing the notice requirement of Art. Ill of § 15-9-81). We, therefore, hold that the state did not violate any portion of the Uniform Mandatory Disposition of Detainers Act in this case.
B
Finally, we shall address whether Manning was denied his constitutional right to a speedy trial. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), sets out the four factors which are to be considered in determining whether an accused has been denied a speedy trial: 1) length of delay; 2) the reason for the delay; 3) the defendant’s assertion of the right; and 4) prejudice to the defendant.
The Supreme Court stated in Barker, “We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.” Barker, 407 U.S. at 533, 92 S.Ct. at 2193.
The right to a speedy trial is activated when a warrant of arrest is issued. Steeley v. City of Gadsden, 533 So.2d 671 (Ala.Cr.App.), cert. denied, 533 So.2d 671 (Ala.1988). The length of delay from the time Manning was served with the writs of arrest until the date of his consolidated trial was 15 months. In Arnett v. State, 551 So.2d 1158 (Ala.Cr.App.), cert. denied, 551 So.2d 1158 (Ala.1989), this court stated *1267 that a 20-month delay from indictment to trial was not prejudicial.
The record reveals that Manning’s trial was originally set for 12 months from the date of his arrest but that Manning and defense counsel requested two continuances, which postponed the trial date 2 months. The record further reveals that the state requested one continuance due to the unavailability of an eyewitness, which postponed the trial date one month. In light of Manning’s two continuances and the unavailability of the State’s key eyewitness, who had just given birth to child, the delay cannot be charged against the state as needless delay. Kimberly v. State, 501 So.2d 534, 537 (Ala.Cr.App.1986), cert. denied, 501 So.2d 534 (Ala.1987).
It is undisputed that Manning repeatedly and timely asserted his right to a speedy trial, and this factor must be weighed in Manning’s favor.
In regard to the fourth factor of the Barker analysis, we find that Manning suffered no prejudice as a result of the delay. We cannot say that the delay caused prejudice to Manning because he was in prison and his freedom was already curtailed as a result of his conviction on a prior offense. Goodson v. State, 588 So.2d 509 (Ala.Cr.App.), cert. quashed, 588 So.2d 509 (Ala.1991). Manning, moreover, failed to show that the delay caused any anxiety or concern or that the delay impaired his defense.
Considering all four factors, we, therefore, hold that under the circumstances of this case, Manning was not deprived of his constitutional right to a speedy trial.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.